No. 37,318

BANKERS INVESTMENT COMPANY, *Appellant*, v. J. E. MEEKER, C. W. DAWSON, doing business as Meeker-Dawson Motor Company, HENRY BOOTS, and CLAUDE HINDMAN, Interpleader, *Appellees*.

(201 P. 2d 117)

No. 37,319

BANKERS INVESTMENT COMPANY, J. E. MEEKER, C. W. DAWSON, doing business as Meeker-Dawson Motor Company, and HENRY BOOTS, *Appellees*, v. CLAUDE HINDMAN, Interpleader, *Appellant*.

Opinion filed November 30, 1948.

*John Jay Darrah, Dale Kidwell, G. W. Ball* and *Robert B. Morton,* all of Wichita, and *William Cole,* of Hutchinson, were on the briefs for appellant Bankers Investment Company; *B. V. Hampton* and *R. F. Crick,* both of Pratt, were on the briefs for appellant Claude Hindman.

*Patrick J. Warnick* and *Alan B. Phares,* both of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

Cowan, J.: The Bankers Investment Company is the holder of a mortgage on a 1942 Pontiac sedan coupé. It brought suit in replevin against the defendants, Meeker, Dawson and Boots, for recovery of the automobile. Claude Hindman interpleaded and asked that his ownership of the vehicle be established subject to the mortgage lien of the plaintiff. At the close of plaintiff's and the interpleader's evidence, the defendants demurred thereto, which demurrer was sustained by the district court. From such ruling this appeal was taken. The parties will be referred to as they appeared in the court below.

Prior to June 13, 1947, Melvin Withers, a used-car dealer at Pratt, Kan., was the owner of the 1942 Pontiac sedan coupé in question. On that date interpleader Claude Hindman negotiated for the purchase of the same from Withers. Hindman lacked sufficient funds to make the purchase so he and Withers drove to Wichita to secure the requisite money. Hindman took the unassigned certificate of title, went to plaintiff's place of business at Wichita and negotiated the loan. The note and chattel mortgage on the car were executed by Hindman to plaintiff and the certificate of title was filled in, in ink, with Hindman's name and address as purchaser and the name of Bankers Investment Company as lienholder together with the amount of the mortgage, *i. e.,* $975.60. The proceeds of the loan were delivered to Hindman in two checks, one for $202.62, payable to Hindman only, with which Hindman paid off a lien held by the plaintiff on another car, and the other for $597.38, payable to Hindman and Withers jointly. Hindman took the second check together with the unassigned certificate of title, and after endorsing the check to Withers, delivered it to Withers, who executed the assignment portion of the certificate of title and

gave the same to Hindman. Hindman and Withers journeyed to Pratt, Kan., where they resided, and there Withers turned over the keys of the Pontiac to Hindman. The signature of Withers to the assignment was notarized on June 30, 1947. Prior to that date the plaintiff recorded its mortgage in Pratt county. On June 30, 1947, Hindman entered into a tentative arrangement with W. B. Thompson of Pratt, Kan., for the purchase of a Ford truck which was to be paid for by transfer of the 1942 Pontiac and check for $1,200. Hindman delivered the certificate of title (unassigned) to Thompson with the understanding that when Thompson produced an assigned title to the truck to Hindman then Hindman would make application for the title to the Pontiac in his name and consummate the trade by assigning the new title to Thompson. Hindman delivered the Pontiac to Thompson and took possession of the Ford truck. During all this time the Pontiac had been located in Pratt. At the time Hindman delivered the unassigned certificate of title Hindman's name appeared in the assignment as owner and Bankers Investment Company as lienholder over Withers signature as assignor and Hindman did not see the certificate of title again until it was introduced in evidence at the trial.

On July 7, 1947, the certificate of title was sent to the vehicle commissioner by defendant Boots with his application for issuance of new title in his name. The certificate, when surrendered to the vehicle commissioner, had been altered so that the name of "Boots Used Cars" appeared as assignee instead of Hindman. The name of the Bankers Investment Company had been eradicated together with the amount of the lien. Based upon the changed certificate of title, the vehicle commissioner issued a new certificate to "Boots Used Cars."

On the trial of the case in the district court an expert examiner of questioned documents testified that by the use of ink eradicator solution the name of Hindman had been removed together with the name of the plaintiff lienholder and the amount of the lien, but the signatures of the notary and of Withers remain on the assignment; that there had been inserted in the assignment after the eradication of Hindman's name as assignee the words, "Boots Used Cars." Upon completion of plaintiff's and the interpleader's evidence, the defendants demurred thereto. The trial court sustained the demurrer on the ground that at the time the mortgage was executed Hindman had no title to the car and by reason thereof the mortgage

was void. In this we think the court was in error. Where a mortgage is given in contemplation of the ·immediate acquisition of property, it cannot be said to be a mortgage of after-acquired property but is a valid and subsisting mortgage as soon as the mortgagor obtains possession of and title to the property as contemplated by the transaction. In the case of *State v. Winslow*, 150 Kan. 475, 95 P. 2d 277, the defendant there was charged with the felonious sale of mortgaged property with intent to defraud the mortgagee. We quote from the opinion as follows:

"Briefly, the partial record presented tends to show that appellant had located certain cattle which he wanted to buy. He went to the bank, explained the situation, and borrowed $450 to buy these specific cattle. To secure the loan he gave the bank a mortgage on the cattle to be purchased, describing them. Appellant promptly purchased the cattle with the money borrowed, and later sold the property described in the chattel mortgage without the knowledge or consent of the mortgagee, and without making a payment on the mortgage. This transaction formed the basis of the prosecution. His sole point is that the property mortgaged 'was not in existence' at the time the mortgage was executed. We construe this contention to mean that appellant was not the owner of the property at the time the mortgage was given. His argument is that the mortgage was absolutely void, from which argument we presume he thinks it follows that he committed no offense when he later sold the property and kept the money. The point is not well taken. The mortgage was valid as between the parties. (*Miller v. Sooy*, 120 Kan. 81, 242 Pac. 140.) It was a purchase-money mortgage and was a valid lien on the cattle as soon as they were purchased. (See *Bank v. Venard*, 109 Kan. 15, 18-19, 197 Pac. 877.) In 14 C. J. S. 627, the rule is stated as follows: 'When a mortgage is given . . . in contemplation of the immediate acquisition of the property, it cannot be said to be a mortgage of after-acquired property.'" (p. 476.)

It developed from the trial that Hindman was married at the time he executed the mortgage and he intended to use this Pontiac as a family car. Defendants contend that this mortgage was invalid because it was given on exempt property without the signature of Hindman's wife. But the mortgage was a purchase-price mortgage, at least to the extent of $597.38, and, therefore, did not require the signature of the wife. Moreover, the question of exempt property can be raised only by Hindman, his wife, or their privies. The defendants in this case do not come within any such classifications. As we shall hereafter point out the defendants have no claim to the Pontiac.

The legislature of this state has enacted the motor registration law. One purpose of this act is to prevent the disposal of stolen

cars and the fraudulent transfer of cars. G. S. 1945 Supp., 8-135, reads in part as follows:

"(c) (6) On and after July 1, 1937, it shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

This statute means just what it says, namely, to be valid, each sale must be accompanied by an assignment of certificate of title. The mandate of the statute is not met by an assignment in blank of the certificate of title which is passed from purchaser to purchaser with each transfer of possession of the car. It is clear that the intent of the legislature was to provide a system of registration whereby successive transfers of title of an automobile could be traced. To that end the statute specifies that each sale must be accompanied by an assignment of the certificate of title. Failure to make such an assignment invalidates the sale. No title can be acquired by the prospective purchaser without an assignment. Of course, the use of ink eradication solution has never been recognized as a valid substitute for a legally executed assignment.

Hindman made no assignment to Thompson of the certificate of title of the Pontiac coupé and hence, under the above section Thompson got no title, legal or equitable, which he could transfer to any one else. (*Farmers & Merchants State Bank v. Hunter*, 166 Kan. 52, 199 P. 2d 196.) The defendants acquired no interest in the Pontiac. As a result, the defendants are not assignees, either directly or remotely, of Hindman and cannot raise the question of exemption. The mortgage of the plaintiff is a valid purchase-price mortgage to the extent at least of $597.38, and under the terms thereof, so far as this record discloses, the plaintiff is entitled to the immediate possession of the car.

Turning to the question of the interpleader's rights, it is contended by the defendants that Hindman cannot have both the Pontiac and the Ford truck. This may be true, but under the present state of the record, it appears that Hindman has not procured title to the Ford truck and hence, under the provision of the above statute, cannot successfully claim title thereto. It follows that Hindman is the owner of the Pontiac coupé subject to the mortgage of the plaintiff.

The judgment of the district court is reversed, with directions to grant the plaintiff and the interpleader a new trial.