No. 39,896

MELVIN TILSON and VERA MAE TILSON, *Appellees*, v. CHARLES NEWELL, *Appellee*, and CENTRAL SECURITIES, INC., *Appellant*.

(293 P. 2d 227)

74

filed January 28, 1956.

Opinion

Kenneth G. Speir, of Newton, argued the cause, and Vernon A. Stroberg and Herbert H. Sizemore, both of Newton, were with him on the briefs for the appellant.

Lelus B. Brown, of Newton, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This is an action in which plaintiffs seek to set aside a contract for the purchase of certain motor vehicles on the ground that it was fraudulent and void, to recover money paid on the contract, and for damages resulting therefrom. Defendant Central Securities, Inc., filed a motion to strike certain portions of the amended petition upon the grounds that they were incompetent, irrelevant and immaterial to the issues of the cause of action. This was sustained in part and overruled in part. It then filed a motion for plaintiffs to make their petition more definite and certain in certain particulars. This motion was denied in toto. Central Securities, Inc., filed its demurrer on the grounds, (1) that two causes of action were improperly joined, and (2) that the amended petition did not state facts sufficient to constitute a cause of action against this defendant. This demurrer was overruled and Central Securities, Inc. has appealed.

The amended peition may be summarized and quoted as follows: After stating the addresses of the respective parties it was alleged that the defendant Charles Newell was the lessee of certain land located on the east side of Highway 81 just north of where it is intersected by Highway 196 about 5 miles south of Newton; that prior to March 1, 1954, defendant Newell operated a gas station, garage and restaurant thereon, and maintained his residence a few feet east of the restaurant; that on March 1, 1954, defendant Newell rented the gas station, garage and residence to plaintiffs, and plaintiffs purchased from him his inventory of gas, oil, auto accessories, supplies, restaurant supplies and equipment, including a wrecker truck valued at $110. to which Newell failed and refused to deliver, pass and

assign a certificate of title; that plaintiff Melvin Tilson, doing business as Tilson's Service Station, and his wife, Vera Mae Tilson, the other plaintiff herein, proceeded to operate and maintain the restaurant; that defendant Newell charged plaintiffs 1¢ per gallon to transport oil and gas from the refinery to the gasoline tanks on the premises; that he offered to sell to plaintiffs three trucks which were adapted for use in operating the gas station and garage business; that on May 4, 1954, defendant Newell sold to plaintiffs the three motor vehicles (describing them) for the sum of $7,000, and certain other items, not necessary to mention here, were agreed upon. At the time of the sale of the trucks by defendant Newell to plaintiffs the trucks were actually delivered to plaintiffs; that "said vehicles are the type that are required by the laws of the State of Kansas to be registered"; that in said purchase defendant Newell made arrangements for a partial loan through the defendant Central Securities, Inc., of Newton, and by an agreement between the defendant Newell and the defendant Central Securities, Inc., the certificates of title to the three vehicles were withheld from plaintiffs and said defendants did fail and refuse to pass and assign said certificates of title as required by law, and that their failure and refusal occurred in the following manner: Newell informed plaintiffs he had signed the note and left the certificates of title at the office of Central Securities, Inc. and told plaintiff Melvin Tilson that when he signed the papers he would get the certificate of title. Relying on this promise, Tilson proceeded to the office of the Central Securities, Inc., and was told by its authorized agent, Art Kliewer, to sign the note and mortgage, which he did, and asked the agent for the certificates and the agent informed him, "Oh, no. We are to keep these titles." or words to that effect. The defendant, Central Securities, Inc. did hold and keep the certificates and prevented plaintiff's lawful use and operation of the vehicles. On October 8, 1954, plaintiff Melvin Tilson and one of his creditors made demand upon the Central Securities, Inc. for the assignment and delivery of the certificates and titles unto plaintiff and such demand was refused. The Central Securities, Inc., on October 9, 1954, filed of record the mortgage on the trucks. It was further alleged that, "as a result of said defendants' unlawful and wrongful acts as aforesaid, in depriving plaintiff of the lawful use of said trucks, and in failing and refusing to deliver, pass, and assign said certificates of title to the aforementioned vehicles, including said wrecker truck, as required by law, the sale

of said vehicles was and is fraudulent and void and should be set aside by this Court."

Plaintiffs further alleged that since May 4, 1954, they paid on the purchase price of the vehicles the sum of $6,050, to the defendant Charles Newell for which plaintiffs are entitled to judgment for money had and received, with interest; that plaintiffs are in possession of the vehicles and are holding the same subject to the order of the court. The prayer was for judgment for the sum of $6,050. with interest, and costs.

In what is designated as the second cause of action plaintiffs incorporated therein the allegations contained in their first cause of action and alleged that because of defendants' failure and because of defendants' wrongful and unlawful acts in depriving plaintiffs of the lawful use of the property, the business operated by plaintiffs and known as Tilson's Service Station had been disrupted; that they were deprived of business profits, and were damaged in the sum of $1,500. to date, and that in addition thereto as a direct result of the malicious, wanton and wilful acts of defendants, plaintiffs sustained punitive damages in the additional sum of $1,000. The prayer was for judgment against the defendants in the sum of $2,500. and costs.

Appellant kept these certificates of title until February 24, 1955, when it delivered them to the clerk of the district court in the same imperfect condition as they were when Newell gave them to appellant.

We set out the portions of the statute which we deem to apply here.

G. S. 1949, 8-135, (c) (2), in part, reads: "The certificate of title shall contain upon the reverse side a form for assignment of title to be executed by the owner before a notary public or some other officer authorized to administer an oath. This assignment shall contain a statement of all liens or encumbrances of whatever nature and kind thereon at the time of assignment."

(c) (5), in part, reads: "In the event of a sale or transfer of ownership of a vehicle, trailer or semi-trailer for which a certificate of title has been issued, the holder of such certificate of title shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, as prescribed by the commission and the transferor must deliver the same to the buyer at the time of delivery to him of said vehicle. The buyer shall then present such certificate of title, assigned as aforesaid, to the commission or its authorized agents at the time of making application for registration of such vehicle, whereupon a new certificate of title shall be issued to the buyer, the fee therefor being fifty cents."

(c) (6), in part, reads: "On and after July 1, 1937, it shall be unlawful for any person to buy or sell in this state any vehicle required to be registered

hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

Our decisions interpreting and applying this section have held that the statute means what it says and that failure to comply with the statute on the sale of a motor vehicle renders the sale fraudulent and void. See, *Sims v. Sugg*, 165 Kan. 489, 196 P. 2d 191; *Farmers & Merchants State Bank v. Hunter*, 166 Kan. 52, 199 P. 2d 196; and, *Bankers Investment Co. v. Meeker*, 166 Kan. 209, 213, 201 P. 2d 117. See, also, *Fruit v. Stacy*, 168 Kan. 632, 637, 215 P. 2d 140.

It seems clear that the attempted sale of the trucks from Newell to plaintiffs was fraudulent and void.

We turn now to appellant's demurrer which it claims the court erroneously overruled. The first ground of the demurrer is that two causes of action are improperly joined. Appellant cites G. S. 1949, 60-601, which reads:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of action so united must affect all the parties to the action, except in actions to enforce mortgages or other liens."

Because the action is not one to enforce mortgages or other liens, the question is, do the causes of action affect all parties to the action?

In *Potts v. Lux*, 161 Kan. 217, 166 P. 2d 694, where the action was in four causes of action, it was held:

"A demurrer to a petition on the ground of misjoinder of causes of action is properly overruled when on examination of such pleading it appears the causes of action united therein affect all parties to the action."

See, also, p. 224 of the opinion.

In *Hayes v. Hart*, 127 Kan. 307, 273 Pac. 433, it was held:

"A petition founded on breach of contract of sale of real estate reserving title in the vendor, which prayed judgment against the vendee for price, and prayed for lien, for foreclosure of lien, and for removal of cloud on title fraudulently created by the vendee, considered, and held not to be demurrable on the ground several causes of action were improperly joined."

Appellant argues that the first cause of action seeks no judgment against the appellant, and states no cause of action against it. We do not so read the petition. After alleging the wrongs of each of the defendants it is alleged that as a result of said defendants' unlawful and wrongful acts, the sale of the vehicles was and is fraud-

ulent and void and should be set aside by this court. It then pleads plaintiffs have paid $6,050 on the purchase price of the vehicles for which plaintiffs should have judgment and the prayer was for judgment in that sum; and, in the second cause of action plaintiffs make all the allegations of the first cause of action a part thereof and seek judgment for actual and punitive damages.

We think it clear that both causes of action involve all of the parties to the action. In fact, we see no real necessity of framing the petition in two causes of action.

Appellant next argues that the petition does not state the cause of action against it. We disagree. Whether appellant's retaining the certificates of title and refusing to give them to plaintiffs was an individual act or one in collusion with Newell, it was performing or was an assistant in the performance of acts which our statutes declare to be fraudulent and void. The appellant had no legal authority to have possession of the certificates of title at any time, except, perhaps, long enough to get the description of the vehicles mortgaged.

Counsel for appellant argue that it was the plaintiffs' duty to procure new certificates of title upon the vehicles. That is true, see G. S. 1949, 8-126 (n) and 8-127, but, plaintiffs were prevented from doing so by the wrongful acts of Newell; first, by not properly filling out the assignment and noting the encumbrance on the vehicles and delivering them to plaintiffs; and, second, by turning them over to appellant in an incomplete form and appellant declining to turn them over to plaintiffs. In other words, plaintiffs were unable to get hold of the certificates of title either from Newell or appellant and the fraudulent and unlawful acts of both defendants are what caused the transaction to be fraudulent and void.

We find no error in the record. The judgment of the trial court is affirmed.