No. 44,896

Wilcox Trailer Sales, Inc., *Appellant,* v. Patricia Miller, *Appellee.*

(436 P. 2d 860)

Opinion filed January 27, 1968.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Ralph F. Glenn, Jan W. Leuenberger, M. D. Bartlow* and *Edward B. Soule,* of Topeka, were with him on the brief for appellant.

*Dean Burkhead,* of Topeka, argued the cause and *Robert Tilton,* of Topeka, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was a replevin action filed by the plaintiff-appellant pursuant to K. S. A. 60-1005, to recover possession of a Yellowstone Mobile Home which the defendant-appellee purchased under contract dated December 4, 1964.

The action was commenced when the payments on the Yellowstone Mobile Home were twenty days delinquent. Trial was to the district court which rendered judgment in favor of the appellant for replevin of the mobile home, and in favor of the appellee in the sum of $1,462 on her counterclaim. The plaintiff has appealed.

The pertinent facts are as follows: Max Wilcox is the sole owner of Wilcox Trailer Sales, Inc., hereafter referred to as Wilcox. He is a new house trailer dealer, and has been actively engaged in the business of selling house trailers since 1951.

On November 6, 1964, the appellee, Patricia Miller, hereafter referred to as Miller, contacted Wilcox concerning the purchase of a new house trailer. At that time, Miller was the owner of a 1964 Midjet house trailer on which she owed a balance of $200 and which she proposed to trade in on a new mobile home. On December 4, 1964, the sale was consummated, and Wilcox sold the new Yellowstone Mobile Home to Miller on the terms set out in the purchase money mortgage and the note attached to plaintiff's petition. The Midjet house trailer was accepted as a down payment in the amount of $1,340 and Wilcox agreed to pay the $200 balance remaining thereon. The total time sale price including finance charges and insurance was $4,238.86. The time balance after allowance for the Midjet house trailer was $2,898.86.

The Yellowstone Mobile Home was delivered to Miller at a trailer park south of Topeka. Miller assigned the certificate of title to the Midjet to Wilcox, but Wilcox never furnished Miller a certificate of title, bill of sale, or other indicia of ownership by which she could secure a certificate of title to the mobile home.

The purchase money mortgage and note required Miller to make monthly payments of $61, the first to come due on January 10, 1965. Miller failed to make the first payment but made two payments on or about February 10, 1965, totaling $122. The third payment became due on March 10, 1965. On that date Miller called Wilcox from the hospital and advised him she had been injured in an

automobile accident and would take care of the payment as soon as she was able. On March 30, 1965, as she was returning home from the doctor's office, the Yellowstone Mobile Home was in the process of being replevined and was being towed by Wilcox's truck driven by its employees, and accompanied by a deputy sheriff. Miller's Midjet was sold by Wilcox, and although Wilcox agreed in its replevin bond to return the new mobile home to Miller if a return thereof was adjudged, Wilcox sold the mobile home and Miller lost everything.

Miller's counterclaim against Wilcox alleged that Wilcox did not at the time of the sale or thereafter, execute and deliver to her a certificate of title, bill of sale or other indicia of ownership to the Yellowstone Mobile Home in violation of K. S. A. 8-135 (c) (6), and asked the court to find the sale fraudulent and void, and for the return of the consideration paid by her to Wilcox. She further counterclaimed for damage to her personal belongings which were in the mobile home at the time of replevin.

The pertinent findings of the district court read:

"Defendant's testimony of misrepresentations made to her at the time of the sale and about papers being signed in blank is not proved. Her testimony of about the amount of damage plaintiff did to her personal belongings in the new trailer while repossessing it is discounted, but there was some damage.

"Plaintiff's testimony about Mrs. Miller misrepresenting her credit is not proved. Plaintiff's testimony about how much damage she did to the new trailer in the interim of approximately four months is discounted but there was some damage.

"I find that the severe terms of the purchase money mortgage by which the buyer waived so many rights is overreaching and oppressive, however, it does contain a provision that 'any provisions of this chattel mortgage and said note which shall be prohibited by law in any state shall (as to said state) be un-effective as to such provision only, . . .'

"I do not find any provision thereof that actually affected Mrs. Miller to be illegal, but the result of the whole transaction by which Mrs. Miller lost her old trailer home and the new trailer home, she being in arrears only one $61.00 payment, was unconscionable; however, it all happened in accordance with terms of the contract, not illegal in themselves.

"I will now take up defendant's cross petition in which she contends that the entire transaction was fraudulent and void because of plaintiff's refusal to give her a certificate of title, pursuant to K. S. A. 8-135 (c) (6). *Plaintiff, Wilcox Trailer Sales, Inc., did refuse to give Mrs. Miller, the buyer, any kind of certificate of title.* (Emphasis supplied.)

"This is another case in which the failure of the seller and buyer of a motor-vehicle, house trailer in this case, to comply with the requirements of K. S. A.

8-135 for transfer of a certificate of title with the transfer of possession of the motor-vehicle has brought on litigation."

\* \* \* \* \*

"K. S. A. 8-135 (c) (5) and (6) makes it absolutely mandatory that when a motor vehicle is sold that a certificate of title pass from the seller to the buyer. It makes no exceptions for a conditional sale and, unlike the uniform law, there are no exceptions in the Kansas law. It says that such a sale as we have in this case is fraudulent and void. The section does not limit itself to situations where the dispute is between persons claiming priorities as does Section 3-202 of the uniform law."

\* \* \* \* \*

"In light of what is said above, I believe that the whole transaction has to be undone. But plaintiff insists that Mrs. Miller did not act promptly and that she did not return the new trailer in as good a condition as it was when she purchased.

"Not until March 30, 1965, when the trailer was moved off her lot did she have reason to act and by April 19, she had seen a lawyer and had a cross petition on file. I believe she acted as promptly as necessary.

"As for returning the trailer in as good a condition as it was when she received it, this is impossible, and it is made so as much by the fault of plaintiff as that of defendant. Motor vehicles depreciate as soon as they are taken off the sales floor. Plaintiff's testimony as to excessive damage I feel was exaggerated and supplied for the purpose of making a defense to the counter claim, but there was some depreciation."

Wilcox makes the contention the findings of the district court that, "plaintiff's testimony about Mrs. Miller misrepresenting her credit is not proved," and, "plaintiff's testimony about how much damage she did to the new trailer in the interim of approximately four months, is discounted but there was some damage," are contrary to the evidence. We pass the point with the statement that the district court, as the trier of the facts, heard the testimony of the parties, observed the witnesses as they testified, and made its findings on conflicting evidence. In *Mathey v. Central National Bank of Junction City*, 179 Kan. 291, 293 P. 2d 1012, it was said:

"The rule is well settled in this state that the findings of fact made by the trial court upon conflicting testimony will not be disturbed by this court when there is competent evidence to sustain the findings made. . . ." (l. c. 293.)

We are of the opinion the record discloses substantial evidence to justify and support the findings. Moreover, the finding that the damages claimed by each party against the other, "are proved to the extent that they offset each other," is likewise supported by the evidence, and Wilcox's claim of passion and prejudice on the part of the district court and of its abuse of discretion, is not well founded.

We turn now to the principal question in the lawsuit. Does K. S. A. 8-135 make the entire transaction fraudulent and void and require the parties be returned to the *status quo* as nearly as possible? Wilcox contends the statute is only for the protection of third parties and does not render void the sale of a new vehicle by a dealer where a bill of sale or other indicia of ownership is not executed by the dealer in favor of the purchaser upon delivery of the vehicle. Pertinent statutes of the Registration of Motor Vehicles Act in effect at the time of the transaction on December 4, 1964, provide the answer. All reference is to Kansas Statutes Annotated. Those pertinent are hereafter summarized and quoted.

Miller was the "owner" of the mobile home by virtue of her execution of the purchase money mortgage and note, and having possession of the vehicle. (8-126 [*n*].) Being the "owner" of the mobile home, she was required to obtain a certificate of title to the vehicle (8-127; 8-135), and to register it in accordance with the Act. (8-127; 8-129; 8-135; *Home Finance Corporation v. Cox,* 190 Kan. 553, 558, 376 P. 2d 884.) Upon satisfactory evidence presented to the county treasurer that the mobile home was equipped with living quarters and not purchased for use or operation on the highway, Miller could have secured, simultaneously with the application for certificate of title (8-135 [3]), the registration of the vehicle without payment of the annual registration fee of $10. (8-143 [2] [*b*].)

K. S. A. 8-178 is a part of the Uniform Manufacturers or Dealers Registration Act and supplements the words and phrases defined in 8-126. Subsection (*b*) provides that the words and phrases used therein shall have the meaning respectively ascribed to them, and paragraph 2 reads:

" 'Dealer' shall mean any person actively engaged in the business of buying, selling, or exchanging, a new or used motor vehicle, trailer, semi-trailer, motor-cycle, mobile home or house trailer."

As indicated, Wilcox was a dealer of new mobile homes pursuant to this subsection.

Section 8-135 relates to the transfer of ownership of all vehicles; the issuance of certificates of title therefor, and the assignment and reassignment of ownership of the vehicle described therein. Subsection (*b*) provides in part that upon the transfer and sale of any vehicle by any person or dealer, the new owner shall, within ten days from the date of the transfer of the vehicle, make application

for registration. Subsection (c) relates to the "certificate of title" and attention is directed to paragraph (1) therein which provides that application for certificate of title shall be made by the owner and requires among other things, that it show "all liens of encumbrances thereon" and shall contain a full and proper description of the vehicle. Paragraph (3) therein reads:

"*Dealers shall execute, upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon*, in accordance with form prescribed by the commission *for all vehicles sold by them. Upon the presentation* to the commission or its authorized agents *of a bill of sale executed* in the form prescribed, *by a* manufacturer or *dealer for a new vehicle*, sold in this state, *a certificate of title shall be issued in accordance with the provisions of this act: Provided, however*, That simultaneously with the application for certificate of title, there is also an application for registration, and in no other cases." (Emphasis supplied.)

Pursuant to the foregoing, upon consummation of the sale and delivery of the mobile home to Miller on December 4, 1964, Wilcox was required to execute a bill of sale stating the lien or encumbrances thereon, conveying title to the vehicle to Miller.

The purpose of the Registration of Motor Vehicles Act is to require the issuance of a certificate of title for every vehicle required to be registered under the Act. With respect to the sale of a *new* vehicle by a dealer, 8-135 (c) (3) does not contemplate the existence of a certificate of title. There being no certificate of title, the statute states that the dealer *shall execute*, upon delivery of the vehicle to the purchaser, "a bill of sale stating the lien or encumbrances thereon." The statutory scheme requires that the owner simultaneously make application for a certificate of title and register the new vehicle based upon the dealer's bill of sale. The dealer's bill of sale is the origin of the purchaser's title to the vehicle. If the dealer violates his statutory duty by failing to execute and deliver to the purchaser a bill of sale stating the lien or encumbrances thereon, obviously the purchaser cannot obtain a certificate of title to the vehicle nor procure its registration. The issuance of a certificate of title is the means by which the dealer may preserve his lien (8-135 [c] [5]), and is also the means by which the state may compel the payment of the sales tax by the purchaser. (8-135.)

Wilcox's failure to execute a bill of sale conveying title to the new vehicle to Miller was made unlawful by 8-135 (c) (6), which reads:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle [required to be] registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

Considering the legislative intent and purpose of all the provisions of the Registration of Motor Vehicles Act, we think it clear the Legislature intended that the words "bill of sale" as used in 8-135 (c) (3) have the same connotation as the words "certificate of title" as used in 8-135 (c) (6), and, as thus construed, it is unlawful for a dealer to sell a *new* vehicle required to be registered under the Act, unless at the time of delivery thereof there shall pass between the parties a bill of sale as required to be executed by the dealer; otherwise, the sale of such vehicle is fraudulent and void.

This court has repeatedly stated that the provisions of 8-135 (c) (6) mean exactly what they say, and that they are to be literally interpreted, and strictly enforced, and that failure to comply with its provisions renders the sale of a vehicle required to be registered under the Act fraudulent and void. (*Sims v. Sugg*, 165 Kan. 489, 196 P. 2d 191; *Farmers & Merchants State Bank v. Hunter*, 166 Kan. 52, 199 P. 2d 196; *Bankers Investment Co. v. Meeker*, 166 Kan. 209, 201 P. 2d 117; *General Motors Acceptance Corp. v. Davis*, 169 Kan. 220, 218 P. 2d 181, 18 A. L. R. 2d 808; *Tilson v. Newell*, 179 Kan. 73, 293 P. 2d 227; *Gurley v. Broadway Sales Co.*, 184 Kan. 179, 334 P. 2d 312; *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P. 2d 931.) See, also, *Fruit v. Stacy*, 168 Kan. 632, 215 P. 2d 140.

The case of *Gurley v. Broadway Sales Co.*, supra, involved the sale of a house trailer and it was held that where the purchaser was unable to obtain the certificate of title to the vehicle at the time of delivery because of the seller's refusal to deliver such title, the sale was fraudulent and void. It was further held that 8-135 (c) (6) creates a cause of action based on fraud. In the opinion it was said:

"G. S. 1957 Supp. 8-135 [now K. S. A. 8-135 (c) (6)] applies to the registration of vehicles such as the one here involved and naturally tends to retard the transfer of titles to vehicles to prevent fraud and theft. It is of paramount importance to prevent fraud, theft and trafficking in automobiles. The provisions of the statute are plain, clear and unambiguous and they make it mandatory that a certificate of title had to pass from the defendant to the plaintiffs by

assignment thereof at the time of delivery of the trailer in question. Otherwise, the attempted transaction was fraudulent and void . . ." (l. c. 181.)

In the recent case of *Maryland Cas. Co. v. American Family Insurance Group,* supra, it was held:

"Under the provisions of K. S. A. 8-135 (*c*) (6), it is unlawful for any person to buy or sell in this state any vehicle required to be registered in accordance with the Registration of Motor Vehicles Act unless at the time of delivery thereof there shall pass between the parties a properly assigned certificate of title; and the sale of any vehicle registered under the laws of this state without the assignment of such certificate of title is fraudulent and void." (Syl. ¶ 1.)

In the opinion it was said:

"Since the enactment of what is now K. S. A. 8-135 (*c*) (6) (L. 1937, ch. 72, § 5), we have numerous decisions holding that the statute means just what it says, and failure to comply therewith renders the sale of an automobile fraudulent and void. . . .

". . . The statute was enacted not only to protect the public against fraud and prevent traffic in the sale of stolen automobiles but also to lend stability and certainty in the business climate surrounding each transaction . . ." (l. c. 378, 379.)

In *Tilson v. Newell,* supra, the court interpreted and applied 8-135 (*c*) (6) to a factual situation where the plaintiffs executed mortgages to the appellant finance company and thereafter the seller (Newell) of three motor trucks and the finance company refused to deliver the certificates of title for the trucks to the purchaser at the time of the delivery. The court held that failure to deliver the certificates of title rendered the transaction "fraudulent and void," and, further, that,

". . . the purchaser could maintain an action against the seller and the finance company for the money he had paid on the purchase price of the trucks and for damages resulting from the unlawful acts of the seller and the finance company." (Syl. ¶ 2.)

In the opinion it was said:

"Counsel for appellant argue that it was the plaintiffs' duty to procure new certificates of title upon the vehicles. That is true, see G. S. 1949, 8-126 (*n*) and 8-127, but, plaintiffs were prevented from doing so by the wrongful acts of Newell; first, by not properly filling out the assignment and noting the encumbrance on the vehicles and delivering them to plaintiffs; and, second, by turning them over to appellant in an incomplete form and appellant declining to turn them over to plaintiffs. In other words, plaintiffs were unable to get hold of the certificates of title either from Newell or appellant and the fraudulent and unlawful acts of both defendants are what caused the transaction to be fraudulent and void." (l. c. 78.)

Wilcox cites and places great weight on *Knisley v. Wright,* 192 Kan. 279, 387 P. 2d 154. The case is not helpful and is clearly distinguishable. There, the defendant-dealer sold the plaintiffs a new house trailer and at the time of delivery he executed and acknowledged an instrument which was held to meet all the requirements of a bill of sale, which noted the dealer's lien or encumbrances thereon. It was held the contract of sale was valid and did not violate 8-135 (*c*) (6), and that the district court did not err in rendering judgment for the defendant.

In the instant case, the parties concede that, and the district court found, Wilcox did not convey title to the mobile home by a bill of sale or by any other indicia of ownership, and it is obvious that the *Knisley* case is inapplicable.

Other contentions have been made but it is unnecessary to discuss them. It is sufficient to say they have been carefully examined and found to be without merit.

We are of the opinion that Wilcox's unlawful act in failing to execute a bill of sale at the time of delivery of the mobile home to Miller as required by 8-135 (*c*) (3) made the attempted sale of the Yellowstone Mobile Home to Miller fraudulent and void. Under our holding in *Tilson v. Newell,* supra, that the purchaser can maintain an action against the seller for the consideration paid for the vehicle, the district court did not err in entering judgment in favor of Miller for the amount stated. The judgment is affirmed.