No. 45,005

GEORGE E. ELROD, *Appellee*, v. PREFERRED RISK MUTUAL INSURANCE COMPANY, Des Moines, Iowa, *Appellant.*

(440 P. 2d 544)

Opinion filed May 11, 1968.

*Arnold C. Nye,* of Newton, argued the cause, and *J. Sidney Nye,* of Newton, was with him on the brief for appellant.

*Kenneth G. Speir,* of Newton, argued the cause, and *Vernon A. Stroberg, Herbert H. Sizemore* and *Richard F. Hrdlicka,* all of Newton, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a summary judgment entered in favor of plaintiff in an action to recover on an insurance policy for damage to an automobile by flood.

The trial court entered summary judgment for the sum of $2,695 with interest. The defendant, Preferred Risk Mutual Insurance Company, appeals both as to liability and amount. We will continue to refer to the parties on appeal as plaintiff and defendant.

The following facts are not in dispute. They were set forth in stipulations, exhibits, affidavits, depositions and pleadings and were presented to the trial court in support of plaintiff's motion for summary judgment.

The plaintiff, George E. Elrod, lived in Chico, California. He

was personally acquainted with Harry R. Baker, an automobile dealer in Newton, Kansas. On June 5, 1965, Elrod and Baker agreed in a long distance telephone conversation on the sale of a 1964 Plymouth station wagon. The automobile was located at Baker's place of business in Newton. The agreed cash purchase price was $2,195. Pursuant thereto Baker executed and assigned the certificate of title to Elrod on June 5, and mailed it to Elrod's bank in California with a draft attached for $2,195. It was understood that Elrod would obtain his financing through the California bank rather than pay the higher finance charges of a finance company in Newton.

On June 8, after talking with his banker, Elrod decided to finance the automobile at Newton and he called his friend Baker. Following this conversation Elrod sent a night telegram granting power of attorney to Baker to sign his name on a security instrument in order to raise the amount of the purchase price. Baker received the telegram and on June 9 at 9:30 a. m. he executed the finance papers in Newton and received $2,195 from the finance company. Later on that same day the automobile was damaged by flood in Newton.

On receiving the money from the finance company Baker sent his personal check to Elrod so Elrod might use it to honor the draft and obtain his certificate of title. After picking up the certificate of title on June 11 Elrod learned of the flood damage to the automobile.

Elrod has neither questioned the validity of the security instrument executed by Baker nor attempted to rescind the purchase agreement.

On August 25 at the request of his insurance agent Elrod gave the agent the certificate of title. As previously mentioned the certificate had been dated and assigned by Baker on June 5.

It was understood on June 5 that Elrod was to obtain his license plate in California and mail it to Baker. Baker was to help find a driver and Elrod was to pay all expenses of transporting the vehicle to California.

After the flood the automobile remained with Baker in Kansas.

It is uncontroverted Elrod had an insurance policy covering flood loss on all automobiles owned by him on or after June 5. This policy was issued by the defendant.

There are two primary questions determinative of this appeal. The questions are: (1) Who owned the car at the time of the

flood? and (2) If plaintiff was the owner, did the amount of the loss remain a material issue in the lawsuit?

The defendant argues that plaintiff was not the owner of the vehicle on June 9 when the flood occurred.

It points to K. S. A. 8-135 (c) (6), as interpreted in *Tilson v. Newell*, 179 Kan. 73, 293 P. 2d 227 and *Gurley v. Broadway Sales Company*, 184 Kan. 179, 334 P. 2d 312, and says, since the statute was violated, the plaintiff could not become the owner of the vehicle until he had physical possession of the title certificate. The certificate was obtained by plaintiff on June 11, two days after the flood.

We have examined the statute and the cases cited by defendant. We have reviewed other cases on this question, including *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P. 2d 931 and *Wilcox Trailer Sales, Inc. v. Miller*, 200 Kan. 315, 436 P. 2d 860.

In each case where it has been held no title passed to the purchaser the *vehicle was delivered without assignment of the certificate of title* and the sale was held fraudulent and void. We have found nothing in the cases which would prevent a valid sale at some time prior to delivery of the vehicle if the certificate of title is properly assigned at the time of the sale and mailed to the purchaser's bank.

K. S. A. 8-135 (c) (6) reads:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

The act of omission made unlawful by the statute and which renders the sale fraudulent and void is the delivery of the vehicle to the purchaser without assignment of the certificate of title. In our present case the car was never physically delivered. The seller assigned the title and put it in the United States mail. There was no violation of the statute. Defendant indirectly agrees when it contends title did not pass to Elrod until June 11. If the sale was fraudulent and void on June 9 when the flood occurred it would have remained void on June 11.

In *Weaver v. Hartford Fire Ins. Co.*, 168 Kan. 80, 211 P. 2d 113, it was held the plaintiff owned an insurable interest in a truck

before he received the bill of sale or certificate of title. There it was said:

". . . A person may actually own an automobile and thus have an insurable interest in it and yet not have legal evidence of title. . . ." (p. 84.)

Since the present sale was not fraudulent and void under the statute, the question is—when did title pass to the purchaser? Both parties considered it to be a cash sale. Baker mailed the assigned title certificate to Elrod's bank in California, thereby relinquishing control subject only to payment. When the cash was received by him he could not thereafter prevent the purchaser from obtaining the title papers. It was contemplated by the parties that title would pass to Elrod before the vehicle could be delivered. Otherwise the parties would not have discussed the purchase of a California license and placed the burden and expense of transporting the vehicle upon Elrod.

The general rules of law governing sales of personal property for cash are examined and set forth with supporting citations in *Laughlin Motors v. Universal C. I. T. Credit Corp.,* 173 Kan. 600, 604, 251 P. 2d 857. We do not need to lengthen this opinion by reiterating these rules. Regardless of whether this sale was an executed sale or an executory contract of sale, ownership would have passed to Elrod when the purchase price was received by Baker. The cash was received on June 9 before the flood.

Many cases have been written applying the summary judgment statute, K. S. A. 60-256. A few of these cases are pertinent.

In *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, it was said:

"A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts. (*United States v. Kansas Gas and Electric Company,* 287 F. 2d 601 [10th Cir. 1961].) A motion for summary judgment cannot be made a substitute for a trial either before a court or jury, and a plaintiff who states a cause of action which entitles him to a trial by jury is entitled to have his case tried in that way and cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for summary judgment and have the issues determined by such motion. (*United States v. Broderick,* 59 F. Supp. 189 [D. C. Kan. 1945].)" (p. 211.)

Later in *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976, this court stated:

"In the final analysis a court should not determine the factual issues on a

motion for summary judgment but should search the record for the purpose of determining whether a factual issue exists. If there is a reasonable doubt as to the existence of a material fact a motion for summary judgment will not lie. No matter how the explanation of the rule is phrased we always return to the language of the rule, there must be left 'no genuine issue of any material fact.' " (p. 575.)

In *Jarnagin v. Ditus,* 198 Kan. 413, 424 P. 2d 265, it was said:

"When ruling on a motion for summary judgment, a court must resolve against the movant any doubt as to the existence of a genuine issue of material fact; the evidentiary material submitted by the party opposing the motion must be taken as true, and such party must be given the benefit of all reasonable inferences that may be drawn from such material. (Citing cases.)" (p. 417.)

There is no contention made here that pretrial discovery remained unfinished. The facts were not in dispute on the question of liability. The trial court properly determined as a matter of law from undisputed facts the plaintiff owned the vehicle at the time of the flood and defendant was liable for any loss.

The last sentence of K. S. A. 60-256 ( *c* ) reads:

". . . A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

We now turn to the second question. Did the amount of loss remain a material issue in the lawsuit when summary judgment was entered?

The plaintiff, in support of the trial court's judgment, argues the fair market value of the car was established by the affidavit of Harry R. Baker in which Baker stated such value before the flood to be $2,695. Plaintiff cites *Meyer, Executor v. Benelli,* 197 Kan. 98, 415 P. 2d 415, wherein it was stated:

"Neither is the fact that the allegations in the pleadings create genuine issues of fact controlling. The rule was intended to permit a party to pierce the allegation of facts in his opponent's pleadings by affidavits and discovery, thus controlling the formal issues presented by the pleadings. (Citing cases.)" (p. 100.)

Pleaded issues of fact must be kept alive if a party is to successfully resist a motion for summary judgment. Defendant did not file a counter affidavit as to the amount of plaintiff's loss under the policy, but neither did he concede the amount to be $2,695. We believe a genuine material issue as to the amount remained unresolved at the time the summary judgment was entered. The amount of loss or damage is generally a fact issue which should not be determined by affidavit.

In the petition it was stated:

"That the fair value of said vehicle, immediately prior to destruction by said flood, was $2,695.00, and that immediately after said flood, the said vehicle was of no value, other than limited salvage value of which this plaintiff has no knowledge."

This was denied by defendant in the answer. Nowhere in the stipulations, depositions or affidavits is it stated the vehicle was completely destroyed. The petition indicates a limited salvage value remained after the car was flooded. How limited that salvage value might be is not disclosed.

Various methods of arriving at loss or damage to a vehicle are discussed in *Peterson v. Bachar*, 193 Kan. 161, 392 P. 2d 853. Cost of repairs or difference in fair market value before and after the damage may be proper methods to arrive at the loss under certain circumstances. In case of complete destruction of the vehicle the measure of damages is the reasonable market value thereof before the destruction. Complete destruction was not conceded in the present case. In addition it was uncontroverted the total price paid for the vehicle was $2,195. Therefore, a genuine issue of material fact remained as to the fair market value of the vehicle before and after the flood.

The trial court should not have rendered judgment as to the amount of the loss until after a trial on that issue.

In accordance with the foregoing opinion the summary judgment in favor of plaintiff is affirmed as to the liability for the loss and is reversed and remanded for trial on the issue of the amount of plaintiff's loss.

It is so ordered.