**In re Ray Crawford REED, Debtor.**

No. 90–4226–C.

United States District Court,
D. Kansas.

Oct. 21, 1992.

Kirk D. Auston, Auston & Skinner, Overland Park, Kan., for appellant.

Kevin M. Lyons, Lyons & Lyons, Shawnee Mission, Kan., for appellee.

Ralph E. Skoog, Topeka, Kan., for debtor.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy appeal presents the narrow issue whether the bankruptcy court erred in holding that the seller's assigned security interest in a modular home was not perfected by a notation on the modular home's certificate of title. Issues of law receive de novo review on appeal. *In re Branding Iron Motel*, 798 F.2d 396, 400 (10th Cir.1986). The relevant facts were stipulated to below.

The debtor purchased a double-wide, modular home from Baxter Mobile Homes, Inc. in August of 1979. The seller assigned the sales contract and security agreement to Western Federal Savings and Loan Association of Denver, who then assigned the same to Shelter America Corporation ("SAC"). Although some modular or mobile homes are built and sold without an accompanying manufacturer's statement of origin or a motor vehicle title, the modular home here had been issued a certificate of title by the Kansas Department of Revenue, Division of Vehicles. The modular home, however, did not have a motor vehicle registration, and the debtor never paid personal property taxes on it.

On the certificate of title issued to the debtor on the modular home was the notation of the lien originally held by Western Federal Savings and Loan Association. SAC filed a UCC–1 financing statement in Franklin County, Kansas, the county in which the debtor resided, but it failed to file continuation statements.

Immediately after purchasing the modular home, the debtor transported it to Ottawa, Kansas, and permanently affixed it to certain real estate that he owned. The modular home was placed on a foundation of concrete blocks and concrete and at-

tached later were such improvements as a deck, a patio, and a garage.

On July 19, 1988, the debtor executed a note/security agreement, mortgage, lienholder's statement and UCC–1 in favor of Credithrift of America, Inc. covering the modular home, the lot on which it was situated, and a pickup. This real estate mortgage was properly filed with the Register of Deeds in Franklin County on July 22, 1988.

On July 7, 1989, the debtor filed a Chapter 7 bankruptcy and the real estate and modular home were listed as non-exempt property. As of July of 1989, SAC was owed a principal balance of $19,735.25, plus accrued interest of $921.54, plus per diem interest of $6.82. As of January of 1990, Credithrift of America was owed $25,951.92 plus per diem interest of $11.85.

The general rule is that the filing of a financing statement perfects a security interest. K.S.A. 84–9–302(1). The exception relevant here is a security interest in a vehicle; K.S.A. 84–9–302(3)(c) provides:

[A] vehicle (except a vehicle held as inventory for sale) subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:

Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, or *by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8–135, and amendments thereto.* Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article.

(emphasis added). As of 1989, a mobile home and a manufactured home were vehicles under Kansas law and treated the same. K.S.A.1989 Supp. 8–126(a), (v).

The Kansas Court of Appeals has held that K.S.A. 8–135(c)(5) offers the "exclusive methods for perfecting a security interest in a mobile home." *Beneficial Finance Co. v. Schroeder*, 12 Kan.App.2d 150, 153, 737 P.2d 52, *rev. denied*, 241 Kan. 838 (1987). In *Schroeder*, the seller's assignee perfected its security interest on the mobile home's certificate of title, and the purchaser then transported the mobile home to the purchaser's property where it had its wheels removed and was placed on a concrete block foundation. 12 Kan. App.2d at 150, 737 P.2d 52. The purchasers subsequently mortgaged their real property to two different creditors. When the debtor's property was foreclosed upon, a priority dispute arose between the three creditors. The trial court held that the mobile home had become a fixture when it was attached to the concrete block foundation and, therefore, the seller's assignee lost its priority by failing to make a fixture filing. The Kansas Court of Appeals reversed for the following reasons:

Based on the language of K.S.A.1986 Supp. 84–9–302(3)(c) and the Kansas comment, we believe the legislature intended 8–135(c)(5) to contain the exclusive methods for perfecting a security interest in a mobile home. As a practical matter, if mobile homes were subject to fixture filing requirements, a secured party with an interest in a mobile home could only maintain priority by making a new fixture filing every time the mobile home is moved. In today's mobile society, a secured party would be under an enormous burden to continuously monitor the whereabouts of the mobile home. By 8–135(c)(5) governing the exclusive methods of perfection, the secured party is perfected with only one filing no matter where the mobile home is located.

We find unconvincing the argument urged by Beneficial and Farmers and Merchants that subsequent parties with an interest in the real estate are often unable to ascertain whether the structure on the property is a mobile home. While it may not be readily apparent whether the structure is or is not a mo-

bile home, these parties can protect their interests by more careful inspection, by questioning the home owner, or by checking for a certificate of title. As a policy matter, it is more reasonable to require a party who subsequently obtains an interest in specific real estate to make inquiry concerning a structure located on the property than to require a party with a security interest in a mobile home to maintain constant vigilance regarding the whereabouts and alleged fixture status of the mobile home.

Under Kansas law, the exclusive methods for perfecting a security interest in a mobile home are contained in K.S.A.1986 Supp. 84–9–302(3)(c), as more specifically described in K.S.A.1986 Supp. 8–135(c)(5). 12 Kan.App.2d at 153–54, 737 P.2d 52. Supported by statute, comment and policy judgment, the Kansas Court of Appeals definitively chose notation on certificate of title over fixture filing as the sole and uniform method of perfecting a security interest in a mobile home.

The bankruptcy court, nonetheless, held that SAC's security interest was not perfected by the notation on the certificate of title. It did not follow *Schroeder* principally because it believed the Kansas Court of Appeals had not considered all of the Kansas statutes involved with the registration of mobile homes. The premise to the bankruptcy court's conclusion is that a certificate of title is not required by Kansas law unless registration of the vehicle is also required. The bankruptcy court found hidden in the "quagmire" of the Kansas registration statutes a provision existing since 1978:

> If the owner of a mobile home also owns the land where such vehicle is located, or where such vehicle is placed on a permanent foundation, and where such owner has registered such vehicle with the county clerk for real estate tax purposes in the county where located, then no registration under this act shall be required.

K.S.A.1989 Supp. 8–143(5); 1978 Kan.Sess. Laws, ch. 30, § 2. Believing its premise

sound and the statute plain in scope, the bankruptcy court rejected *Schroeder* and speculated that the Kansas Court of Appeals had assumed erroneously that certificates of title were required of all mobile homes.

■ Fundamental to our system of federalism is the notion that state courts "are the final arbiters of the State's own law." *See Wardius v. Oregon,* 412 U.S. 470, 477, 93 S.Ct. 2208, 2213, 37 L.Ed.2d 82 (1973). Federal courts are bound by the state court's interpretations of their laws, absent such extreme circumstances as those involving federal constitutional issues. *Mullaney v. Wilbur,* 421 U.S. 684, 690–91, 95 S.Ct. 1881, 1885–86, 44 L.Ed.2d 508 (1975). When the state law question has not been addressed by the state's highest court, a federal court must follow a decision by the state's intermediate court unless other persuasive data convinces it that the state's highest court would answer the question differently. *See Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989); *Jordan v. Shattuck Nat. Bank,* 868 F.2d 383, 386 (10th Cir. 1989).[1] Though it disagrees with the state court's reasoning or with the result required, the federal court must still abide by the state court decision. *Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 820 (11th Cir.1985). The reasons articulated by the bankruptcy court do not convince this court that the Kansas Supreme Court would decide the issue any differently than the Kansas Court of Appeals did in *Schroeder.*

■ The bankruptcy court understood Kansas law as not requiring a certificate of title unless the vehicle was also subject to registration laws. To support this understanding, it quoted the following general statement from *Wilcox Trailer Sales, Inc. v. Miller,* 200 Kan. 315, 318, 436 P.2d 860 (1968): "The purpose of the Registration of Motor Vehicles Act is to require the issuance of a certificate of title for every vehicle required to be registered under the

---

1. Federal courts are to follow decisions of intermediate state courts, like the Kansas Court of Appeals [K.S.A. 60–2101(a) ], which have jurisdiction statewide and which issue decisions binding upon all district courts unless in conflict with a decision of the state's highest court. *Gooding v. Wilson,* 405 U.S. 518, 525 n. 3, 92 S.Ct. 1103, 1108 n. 3, 31 L.Ed.2d 408 (1972).

Act." The issue in *Wilcox* was whether the seller's failure to execute a bill of sale as required by statute rendered the attempted sale of the mobile home fraudulent and void. It was in this context that the Kansas Supreme Court said that the purpose of the registration laws was to have certificate of titles on all vehicles subject to registration. But, in the same paragraph as the quoted sentence, the Court also said that "a certificate of title is the means by which the dealer may preserve his lien (8–135[c][5] ), and is also the means by which the state may compel the payment of the sales tax by the purchaser. (8–135.)" 200 Kan. at 320, 436 P.2d 860. Since the Kansas Supreme Court in *Wilcox* was not asked to decide whether a certificate of title is required for a mobile home when registration is not and since the Court observed that a certificate of title served purposes[2] other than registration, the bankruptcy court gave undue significance to this incidental remark.

Nowhere in K.S.A.1989 Supp. 8–135(c) does it say expressly that a certificate of title is only necessary if the vehicle must be registered. In fact, 8–135(c) reads in part: "The following paragraphs of *this subsection shall apply to the issuance of a certificate of title for a nonhighway vehicle,* as defined in K.S.A. 8–197, and amendments thereto, except to the extent such paragraphs are made inapplicable by or are inconsistent with K.S.A. 8–198, and amendments thereto." As set forth in K.S.A.1989 Supp. 8–198, a nonhighway vehicle need not be registered, but the purchaser must obtain a certificate of title. These are not the only statutes distinguishing between certificate of titles and registrations.

Both K.S.A.1989 Supp. 8–135(c)(3) and K.S.A.1989 Supp. 8–143(5) indicate that titling requirements may exist independent of registration requirements. In pertinent part, 8–135(c)(3) provides:

Dealers shall execute, upon delivery to the purchaser of every new vehicle, a manufacturer's statement of origin stating the liens and encumbrances thereon.... Upon the presentation to the division [Division of Motor Vehicles] of a manufacturer's statement of origin, by a manufacturer or dealer for a new vehicle, sold in this state, *a certificate of title shall be issued if there is also an application for registration, except that no application for registration shall be required for a mobile home or travel trailer used for living quarters not operated on the highways.*

(emphasis added). This provision contemplates that the purchaser of a mobile home used as a residence and not operated on the highway must apply for a certificate of title even though no application for registration need be made. At 8–143(5), it appears that the owners eventually must obtain a "nonhighway registration" unless the mobile home is located on land owned by the mobile home owner or placed on a permanent foundation and the mobile has been registered for real estate tax purposes. This case does not require the court to delve into the intricacies and vagaries of Kansas motor vehicle registration law as it existed in 1989 and to explain all of its subtleties. Even the parties have eschewed any such undertaking. It is sufficient to say that 8–135 distinguishes between titling requirements and registration requirements, that 8–143(5) speaks only to the registration of nonhighway vehicles, and that 8–143(5) does not indicate it is modifying or displacing the titling requirements set forth at 8–135(c) for nonhighway vehicles.

The Kansas Comments to K.S.A. 84–9–302 also recognize the distinction between registration and titling under Kansas law:

Subsections (3)(b) and (3)(c) make it clear that security interests in motor ve-

---

**2.** The Tenth Circuit has summarized these other purposes:

"The various purposes behind § 8–135 and its companion sections are to provide a ready means for ascertaining the owner of a motor vehicle, compel payment of sales tax by the purchaser of an automobile, prevent fraud

and theft of automobiles, prevent trafficking in stolen automobiles, and to lend stability to the business climate surrounding the sale of automobiles."

*In re Littlejohn,* 519 F.2d 356, 358 (10th Cir. 1975).

hicles can be perfected only be indication of the security interest on the certificate of title. These matters are governed by K.S.A. 8–135, which must be read in close relationship to this subsection. Of course if the vehicle is not required to be *registered,* as would be the case with most farm implements, filing under Article 9 would again come into play. On the other hand, mobile homes are generally *titled* and perfection would be governed by K.S.A. 8–135 rather than Article 9, even though other aspects of the secured transaction would still fall within the scope of the UCC.

The bankruptcy court narrowly read this Comment as meaning that if a mobile home need not be registered that Article 9 filing requirements would apply. On the other hand, the Kansas Court of Appeals in *Schroeder* directly relied on the more specific sentence in this Comment that says if the mobile home must be titled then perfection is governed by K.S.A. 8–135. The Kansas Court of Appeals reading of the Comment is more in keeping with the rule of *ejusdem generis,* that is, the specific terms control over the general provisions. The Kansas Supreme Court often looks to the Kansas Comments for direction, and the Tenth Circuit has relied also on this authority when confronted with unresolved issues of Kansas law. *Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1533 n. 3 (10th Cir.1987). The Kansas Comment reflects that mobile homes are unique in that they are subject to titling requirements, as opposed to registration requirements, but that perfection under K.S.A. 8–135 is still controlling. Indeed, the terms of K.S.A. 84–9–302(3)(c) are not triggered by a state law requiring registration but by one "which requires indication [of a security interest] on a certificate of title."

Finally, the policy reasons justifying the *Schroeder* decision are fully implicated here. It is true that SAC may have had some clues that the debtor intended to attach his modular home permanently. Yet, this did not mean the modular home was no longer mobile. Nor could a creditor like SAC presume under these circumstances that its priority status was secure under a fixture filing rule, since the possibility for a move remained. Being expensive and durable, mobile homes are readily available to serve as collateral for non-purchase money loans. *See In re Johnson,* 105 B.R. 352, 356 (Bankr.S.D.W.Va.1989). The facts of this case are not a compelling reason to question the soundness of the Court of Appeal's conclusion that it is more reasonable to ask a subsequent secured party to inquire and determine the secured status of a modular home as of a particular time than to insist on continuous vigilance by a creditor seeking to retain its priority.

The court is not convinced that the Kansas Supreme Court would decide the *Schroeder* case any differently than the Court of Appeals did. Since *Schroeder* is on all fours with the present case, the court must conclude that the bankruptcy court erred in holding that SAC's lien notation on the certificate of title did not perfect its security interest in the modular home.

IT IS THEREFORE ORDERED that the bankruptcy court's memorandum of decision and judgment of decision filed on December 4, 1990, is reversed as to the conclusion that SAC had not perfected its lien on the modular home, and the case is remanded for further proceedings consistent with this order.