No. 37,162

KENNETH SIMS, *Appellant,* v. JACK N. SUGG and NEAL O. WILLIAMS, doing business as THE WILLIAMS MOTOR COMPANY, *Appellees.*

(196 P. 2d 191)

Opinion filed July 10, 1948.

*R. C. Woodward, H. Pauline Woodward,* both of El Dorado, and *Joe W. Collins,* of Stockton, Mo., were on the briefs for the appellant.

*O. J. Connell, Jr.,* of El Dorado, was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action for the possession of an automobile, or in the alternative for damages for its retention. The demurrer of one of the defendants to plaintiff's petition was sustained. Plaintiff appeals.

The petition alleged that plaintiff is a resident of Missouri and on September 19, 1947, owned the described automobile and on that day defendant Sugg and plaintiff made a contract for its sale for $1,175 cash; that plaintiff gave Sugg his certificate of title issued by the state of Missouri and assigned it to him and delivered the car to Sugg, taking in payment therefor a check signed by Sugg dated the same day, and drawn on the Citizens National Bank, of Eureka, Kan.; that neither he nor Sugg notified the secretary of state of Missouri of the assignment of the certificate of title, as required by the laws of Missouri; that he immediately deposited the check and it was presented in due course at the bank on which it was drawn. The check was protested for nonpayment on account of no funds; that immediately upon the delivery of the automobile to Sugg on the evening of September 19, 1947, he drove it to El Dorado,

Kan., and in the morning of September 20 sold it to defendant Williams, doing business as the Williams Motor Company; that at the time Sugg did not deliver to the defendant Williams a signed certificate of title, as required by G. S. Supp. 1945, 8-135; that the sale from Sugg to Williams was void and did not vest in Williams any title or right to the possession of the automobile. The petition further alleged there was a total failure of consideration in the sale from plaintiff to Sugg and that the sale was induced by the fraudulent representation of Sugg that he had deposited in the bank on which it was drawn sufficient funds to pay the check on presentation; and that the plaintiff is entitled to the possession of the described automobile or to judgment for its value and damages for its wrongful detention.

The defendant Sugg is a fugitive and did not appear in the district court. Service was had upon Williams only. He appeared and filed a general demurrer to the petition on the ground it did not state a cause of action against him. This demurrer was sustained; hence this appeal.

Plaintiff first argues that the sale from plaintiff to Sugg was void for a total failure of consideration. There is not much doubt about that. The trial court sustained Williams' demurrer to the petition on the ground he was an innocent purchaser and though his vendor had no title to the automobile the plaintiff cannot recover against him, that is, Williams, because plaintiff placed the automobile in Sugg's possession and thereby made it possible for Sugg to sell it to defendant Williams. The plaintiff argues that an automobile is different from any other class of personal property and that the purchaser of an automobile is governed by special statutory enactments. In this connection plaintiff points out under the facts pleaded the automobile was not at the time of the sale to defendant Williams recorded under the laws of Kansas nor was it accompanied by transfer of title, as required by G. S. 1945 Supp., 8-135. This section provides for the procedure of the transfer of ownership of an automobile. Certain subsections of that section are as follows:

"(b) Upon the transfer and sale of any vehicle by any person or dealer, the new owner thereof shall, within ten days from the date of such transfer of said vehicle, make application to the department for registration of said vehicle and after such time it shall be unlawful for the owner or any other person to operate such vehicle upon the highways of this state unless said vehicle has been registered as provided in this act and for failure to make application for registration as provided in this section, a penalty of two dol-

lars shall be added: *Provided, however,* That a registered dealer of this state may operate such vehicle by displaying thereon his dealer number plates."

"(c) *Certificate of title.* After the passage of this act, in cases where a vehicle has not been registered in this state and a license issued therefor the previous year, and on and after July 1, 1937, in all cases, no vehicle required to be registered hereunder shall be registered or number plates issued therefor, either original issue, or duplicate, unless the applicant for registration thereof shall at the same time present satisfactory evidence of ownership and make application for an original certificate of title for such vehicle. . . ."

"(c) (2) The certificate of title shall contain upon the reverse side a form for assignment of title to be executed by the owner before a notary public or some other officer authorized to administer an oath. This assignment shall contain a statement of all liens or encumbrances of whatever nature and kind thereon at the time of assignment. The certificate of title shall also contain on the reverse side a form for reassignment by a registered dealer, stating the liens or encumbrances thereon, executed in like manner as the assignment. This reassignment by a registered dealer is to be used only where the registered dealer resells the vehicle, and during the time that the said vehicle remains in the dealer's possession for resale, the certificate of title shall, for the purpose of this act, be deemed to be dormant. . . ."

"(c) (5) . . . On and after July 1, 1937, it shall be unlawful for any person to operate in this state a motor vehicle, trailer or semitrailer registered under the provisions of this act, or to transfer his title to a vehicle, trailer or semitrailer to any person, or dealer, unless a certificate of title shall have been issued as herein provided. In the event of a sale or transfer of ownership of a vehicle, trailer or semitrailer for which a certificate of title has been issued, the holder of such certificate of title shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, as prescribed by the commissioner and the transferor must deliver the same to the buyer at the time of delivery to him of said vehicle. The buyer shall then present such certificate of title, assigned as aforesaid, to the commissioner or his authorized agents at the time of making application for registration of such vehicle, whereupon a new certificate of title shall be issued to the buyer, the fee therefor being fifty cents. If such vehicle is sold to a resident of another state or country the dealer or person making the sale must notify the commissioner of such sale and the commissioner shall make such notation on the duplicate file with the department; if such vehicle, trailer or semitrailer is destroyed or dismantled or sold as junk. . . ."

"(c) (6) On and after July 1, 1937, it shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

The question is—Did the failure of defendant Sugg and Williams to comply with any of these statutes render the sale from Sugg to Williams void? The answer lies in the significance to be attached

to the provisions, especially those of G. S. 1947 Supp. 8-135 (c) (6). One of the most troublesome crimes with which officers have had to deal in recent years has been automobile theft. The mobility of automobiles has made the apprehension of such thieves doubly difficult. Not the least troublesome factor of the automobile theft business is the fence who receives stolen automobiles usually at a great distance from the scene of its theft. In an attempt to prevent such practices or at least to hamper them as much as possible the legislature enacted the elaborate system of licenses and transfers of title for which provision is made in the statute quoted heretofore in this opinion. It was the duty of Williams when Sugg offered the car to him for sale to ascertain whether the seller had complied with these provisions. In the first place we find G. S. 1947 Supp., 8-129 (b), as follows:

"In the event that the vehicle for which registration is applied is a specially constructed, reconstructed or foreign vehicle, such fact shall be stated in the application, and with reference to every foreign vehicle, which has been registered theretofore outside of this state, the owner shall exhibit to the department the certificate of title and registration card, or other evidence of such former registration as may be in the applicant's possession or control, or such other evidence as will satisfy the department that the applicant is the lawful owner or possessor of the vehicle."

G. S. 1947 Supp., 8-126 (1), provides as follows:

" 'Foreign vehicle.' Every motor vehicle, trailer or semitrailer which shall be brought into this state otherwise than in ordinary course of business by or through a manufacturer or dealer and which has not been registered in this state."

Obviously this automobile had been registered outside this state. The petition alleges that. The last sentence states the purpose of the section, that is, that the person applying for registration of a vehicle from out the state shall satisfy the department that the applicant is the lawful owner or possessor of the automobile. The purpose of the statute is clearly stated to make difficult the transfer of title to automobiles by other than the rightful owners. Had Williams sought to cause Sugg to comply with this statute time enough would have been consumed that Sugg's fraud would have come to light. Naturally such provisions tend to retard the transfer of title to automobiles but the prevention of fraud and theft is of paramount consideration. People dealing in an open and aboveboard manner can afford to be slowed down a bit in order that the disposal of stolen cars may be made more difficult. It must be

noted the petition alleges that Sugg failed to give the secretary of state of Missouri notice of the sale of the automobile by Sims, the plaintiff, to Sugg. It was Sugg's duty to present to that official in Missouri the certificate of ownership which had been assigned him by Sims in order that a certificate of ownership might be issued to him by that officer. (See Revised Statutes of Missouri, 1929, 7774 [c].)

Finally we have our statute, G. S. 1947 Supp., 8-135 (c) (6) which has been quoted heretofore in this opinion. That says in plain words it shall be unlawful to buy or sell any automobile in this state without a certificate of title passing it and further that such a sale shall be fraudulent and void. This is not a rule such as that relied on by defendant here, that the person who made it possible for the fraud to be perpetrated must suffer. It is a clear, unambiguous provision of the statute. It is difficult to see why the sale was not fraudulent and void.

A situation similar to this was passed on in *Anderson v. Arnold-Strong Motor Co.*, 229 Mo. A. 1170, 88 S. W. 2d 419. There the automobile for which a buyer had given a no-fund check had been sold to the defendant motor company without compliance with a statute about like ours with reference to certificate of title. The original seller brought an action against the party to whom the car had been sold. The court said:

"(3) As it stands admitted that the defendant never did receive a certificate of title to the car in issue, it follows that the alleged sale to defendant was fraudulent and void.

"With the above conclusion there is but little more to be said. The defendant, who never at any time acquired title to the car in question, cannot much be concerned as to the method by which the plaintiff reacquired title."

To the same effect is *State, ex rel. Connecticut Fire Ins. Co. v. Cox,* 306 Mo. 537, 268 S. W. 87. In that case there had been an attempt to comply with the statute. The court pointed out that the statutes had been enacted to prevent trafficking in automobiles and the provisions were mandatory and could not be dispensed with. (See, also, *Sorensen v. Pagenkopf,* 151 Kan. 913, 101 P. 2d 928.)

*Motor Co. v. Warren,* 113 Kan. 44, 213 Pac. 810, was a case where a car was brought from Missouri into Kansas and sold in violation of a chattel mortgage without compliance with the certificate of title statute. We held:

"The purchase of an automobile in total disregard of a statute governing the sale and transfer of such property is void and affords the purchaser no

defense in a replevin action instituted by a plaintiff having a lawful claim to the property." (Syl. ¶ 1.)

Since the purported sale by Sugg to Williams was void Williams was not an innocent purchaser and received no title. It follows the petition stated a good cause of action against Williams and the demurrer to the petition should have been overruled.

The judgment of the trial court is reversed.