**MERCANTILE BANK AND TRUST COMPANY, Administrator of the Estate of Robert James Leary, Deceased, Appellant,**

v.

**The WESTERN CASUALTY AND SURETY COMPANY, Appellee.**

No. 19498.

United States Court of Appeals
Eighth Circuit.

Sept. 2, 1969.

---

1. Radio Corporation v. Radio Engineering Laboratories, supra, p. 8.

Charles C. Shafer, Jr., Kansas City, Mo., for appellant.

Thomas E. Deacy, Jr., of Deacy & Deacy, Kansas City, Mo., for appellee; Lester J. Vandever, Kansas City, Mo., with him on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a summary judgment and involves the construction of an automobile insurance policy issued to "Robert Leary" (Robert James Leary) covering three automobiles, one of which was a Ford Thunderbird. The policy covered only comprehensive insurance on the Thunderbird as Leary had eliminated this car from its original liability coverage and obtained a refund of the premium on that account. On January 1, 1965, Mr. Leary while driving the Thunderbird had a head-on collision with another automobile, resulting in the loss of his life and the lives of three of the occupants of the other car and severely injuring the fourth occupant. This suit was brought by the Administrator of Leary's estate, Mercantile Bank and Trust Company, against the insurance carrier, The Western Casualty and Surety Company, seeking to recover certain amounts allegedly due under the policy as a result of the accident.

The parties entered into a stipulation of facts and, based upon findings from the stipulation and from uncontroverted evidence consisting of exhibits and affidavits, the trial court entered its memorandum and order and ultimate judgment concluding favorably to Western, holding that the Thunderbird was not covered by liability insurance under the terms of the policy. We affirm.

This is a diversity action and the parties agree that the substantive law of Kansas controls.

Appellant, Administrator of the Estate of Robert James Leary, Deceased, will be referred to as plaintiff. It is plaintiff's contention on appeal that, even though Leary had specifically cancelled the liability coverage on the Thunderbird, it was covered under the "Use of Other Automobiles" clause of the policy issued by Western by reason of the liability coverage on the other two automobiles designated in the policy. Western contends that the Thunderbird was excluded by the terms of the policy which excludes other automobiles owned by the insured or a member of the same household other than a private chauffeur or domestic servant of the named insured or spouse.[1]

---

1. The pertinent part of the insurance policy is as follows:
"V. Use of Other Automobiles: If the named insured is an individual or individual and spouse and if during the policy period such named insured or spouse owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A [bodily injury liability], B [property damage liability] and division 1 of coverage C [automobile medical payments for occupants of car] with respect to said automobile applies with respect to any other automobile, subject to the following provisions:
"(a) Except with respect to division 1 of coverage C, the unqualified word 'insured'

Initially, Leary insured the 1956 Thunderbird and a 1963 Buick under the same policy, both being insured for bodily injury and property damage liability, automobile medical payments, comprehensive and collision coverage. However, prior to the accident Leary purchased a 1965 Mustang for Mrs. Leary's use and called his insurance agent telling him to cover the Mustang with the aforementioned coverages and eliminate the insurance on the Thunderbird altogether, as he intended to store it and not use it. The Learys had two children, twelve and nine years old. Leary considered the Thunderbird more or less a "classic" car and he intended to keep it in storage until his children reached driving age. His insurance broker and agent was Mr. Clyde B. Morris, who had handled all of decedent's automobile insurance for about fifteen years. Mr. Morris suggested to Leary that, rather than eliminate all coverage on the Thunderbird, he should retain comprehensive coverage on it since he was going to keep it but not use it. They agreed to this, and accordingly, as his agent, Morris submitted the request to Western to add the Mustang to the policy with all of the aforementioned coverages, and to eliminate the Thunderbird as to bodily injury and property damage liability, medical payments and collision coverage, retaining only the comprehensive coverage. When this was done and the renewal policy reflecting these changes became effective, a refund was made to Leary as a re-

sult of the elimination of the liability coverage on the Thunderbird.

Leary was the named insured in the policy, although each car was titled in Kansas in the names of Robert J. Leary and/or Patricia Leary. Morris stated that at no time did Leary advise him that the Thunderbird was owned by anyone except himself, the named insured, and that Leary took no exception to the statement contained on the face of the policy that: "Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance the named insured is the sole owner of the auto." Morris also stated that at no time before Leary's death did Leary, or anyone on his behalf, request Morris or anyone connected with Western, insofar as he knew, to insure the Thunderbird for liability coverage.

Subsequent to the issuance of the insurance policy, Leary's work took him to Florida, and at the time of the accident he and his family were living in Jacksonville, Florida. They took the Buick and Mustang with them but left the Thunderbird in storage in Kansas City. Originally, it was planned that Mrs. Leary and the two children would fly back to spend the Christmas Holidays in 1964 with her family in Kansas, but for business reasons Mr. Leary flew back with them. When he decided to return to Jacksonville before his family did, he was unable to secure flight reservations so he had the Thunderbird serviced and left Kansas City for Jack-

---

includes (1) such named insured and spouse, (2) any relative of such named insured or spouse and (3) any other person or organization legally responsible for the use by such named insured, spouse or relative of an automobile not owned or hired by such other person or organization. Insuring Agreement III [definition of "insured"] does not apply to this insurance.

"(b) With respect to coverages A and B, exclusion (a) of Section I shall not apply to such named insured, spouse or relative while such person is occupying an automobile used as a public or livery conveyance other than as the operator thereof.

"(c) Under division 1 of coverage C, this insurance applies only if the injury results from the operation of such other automobile by such named insured, spouse or relative or on behalf of any of them by a private chauffeur or domestic servant of any such individual, or from the occupancy of said automobile by such named insured, spouse or relative.

"(d) This insuring agreement does not apply to any automobile:

"(1) owned by either the named insured or a member of the same household other than a private chauffeur or domestic servant of the named insured or spouse.
*   *   *"

sonville about 9:00 a. m. on January 1, 1965, and the accident occurred approximately one hour later.

As a result of the accident, four suits were instituted against the estate of Leary, and the then Administratrix made demand upon Western to defend the actions. Western refused on the ground that Leary carried only comprehensive coverage on the Thunderbird and not public liability coverage, and that although he carried liability insurance on the two other cars in the same policy this coverage did not extend to his operation of the Thunderbird which was specifically excluded as another owned car. Ultimately the cases were settled by the estate and this suit was instituted seeking reimbursement from Western for the amounts of settlement plus attorneys' fees and an equal amount as punitive damages for Western's refusal to defend the actions.

We agree with the district court's conclusion of lack of liability coverage on the Thunderbird and, supportive of this conclusion, we call attention to the following:

1. Leary's deliberate decision to eliminate the Thunderbird from all insurance coverage.

2. His authorization to his own agent to do this.

3. The agent's suggestion that, as long as he was going to keep the car and put it in storage, he should consider retaining merely comprehensive insurance and obtain a refund of the premium for liability insurance.

4. Leary's agreement to his agent's suggestion and his acceptance of the refund.

5. His failure to obtain public liability insurance on the Thunderbird when he decided much later to use it, thereafter being involved in the accident.

6. The fact that each automobile in the policy was specifically insured only under the provisions of the contract designated and for which a premium had been paid, and the Thunderbird was designated and a premium paid for comprehensive insurance only.

7. The provision with respect to liability coverage when driving other cars specifically stated that such coverage did not apply to any "other" automobile owned by either the named insured or a member of the same household, except a private chauffeur or domestic servant.

We agree with the district court's holding that under the facts here the exclusion of cars owned by the insured or his spouse from coverage under the "Use of Other Automobiles" clause made the liability and other coverage on the Buick and Mustang inapplicable to the Thunderbird. This is a more or less standard provision of automobile liability insurance policies, its purpose being to prevent the owner of several cars from paying for liability coverage on only one car and obtaining coverage when driving his other vehicles under the "Use of Other Automobiles" clause. See collection of cases from various jurisdictions in annotation entitled "Exclusion from 'drive other cars' provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household" in 86 A.L.R.2d 937, and 7 Am.Jur.2d Automobile Insurance §§ 105, 106 (1963).

Yet, despite the factual background, plaintiff has made an ingenious argument on the interpretation of the contract, commencing with the age-old rule of strict interpretation against the insurance company. It is true that Kansas follows the almost universal rule of strict construction against the insurer with regard to ambiguous provisions of an insurance policy; however, there is another rule equally well recognized in Kansas that, where an insurance contract is not ambiguous, courts will not make another contract for the parties but will enforce the contract as made.

The status of the Kansas law on the interpretation of ambiguous provisions was thoroughly discussed in Aetna Cas. & Sur. Co. v. Miller, 276 F.Supp. 341

(D.Kan.1967), and numerous cases of the Kansas Supreme Court cited therein. The court said at 276 F.Supp. 344:

"The law is well laid down in Kansas, as in most other states, that a policy of insurance should be strictly construed against the insurer, and liberally in favor of the insured. See [Queen] Insurance Company v. [Excelsior] Milling Company, 69 Kan. 114, 76 P. 423. Stating the same principle in a different way, ambiguous, inconsistent, or uncertain provisions are construed against the insurer, and most favorably to the insured. (Citing cases.)"

However, the Kansas Supreme Court has considered the provision under consideration here and found it to be unambiguous. See General Leasing Corp. v. Anderson, 197 Kan. 327, 416 P.2d 302 (1966).[2]

When there is no ambiguity, the applicable rule is the one stated in Ferguson v. Phoenix Assur. Co. of New York, 189 Kan. 459, 370 P.2d 379, 382, 99 A.L.R.2d 118 (1962), as follows: "Where an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. (Citing cases.)" To the same effect, see Saul v. St. Paul-Mercury Indem. Co., 173 Kan. 679, 250 P.2d 819, 823 (1952), which involved the construction of a motor vehicle policy. There the court held that the rule concerning the construction of ambiguous terms of a policy does not justify the imposing of insurance risks not assumed by the company and for which no premium has been paid, citing Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374, 375 (1938). See also Ferguson v. Phoenix Assur. Co. of New York, *supra.*

The United States Supreme Court long ago expressed a similar view, which has been often quoted by this court. In the recent case of Kern v. Liberty Mut. Ins. Co., 398 F.2d 958, 960 (8th Cir. 1968), we quoted from Massachusetts Bonding and Ins. Co. v. Julius Seidel Lumber Co., 279 F.2d 861, 865–866 (8th Cir. 1960), where the late Judge John Sanborn said:

"'Perhaps the classical statement of the rule applicable to the construction of contracts of insurance is that of Mr. Justice Sutherland in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416. He said:

"'"* * * It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. (Citations.) This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"'"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. (Citation.) * * *"'"

Judge Sanborn went on to quote from other authorities that the rule pertaining to ambiguity "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." To the same effect, see Home Indem. Co. v. Miller, 399 F.2d 78, 81 (8th Cir. 1968), and McMichael v. American Ins. Co., 351 F.2d 665, 669 (8th Cir. 1965). In the *Home Indem.*

---

2. In the *Anderson* case, the Kansas Supreme Court quoted with apparent approval from Giokaris v. Kincaid, 331 S.W. 2d 633, 638 (Mo.1960), 86 A.L.R.2d 925, where the Missouri court said with regard to a similar provision: "We conclude it is not ambiguous and excludes from coverage the insured's use of any other automobile (1) owned by the insured or a member of the same household * * *."

*Co.* case, *supra,* we quoted from Giokaris v. Kincaid, 331 S.W.2d 633, 636, 86 A.L.R.2d 95 (Mo.1960), that where possible it is our duty to give every clause of the policy some meaning, and that this includes policy provisions excepting liability, citing Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711 (1934). In the *Williams* case, *supra,* Mr. Chief Justice Hughes, delivering the opinion of the Court, said at 291 U.S. 180, 54 S.Ct. 352:

"As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

Western calculated its premium on the coverage which it wrote on the Thunderbird. When the bodily injury and property damage liability, medical payments, and collision coverages were cancelled on the Thunderbird, the premium for insurance on that car was reduced to only $17.00, and it was insured only to the extent of the actual cash or market value if stolen, damaged or destroyed by certain enumerated causes, not including collision. By contrast, the premiums paid on the other two cars, which included liability coverage, were $156.00 on the Mustang and $104.00 on the Buick. The premiums for bodily injury liability alone were $62.00 on the Mustang and $38.00 on the Buick. Certainly, it is unreasonable to construe the policy so as to hold the company to the same degree of liability on the Thunderbird either with or without the payment of premium for liability coverage. As a matter of fact, Item 3 of the policy specifically provides:

"The insurance afforded for each automobile is only with respect to such of the following coverages as are indicated by specific premium charge. The limit of Western's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

This provision was construed by the Kansas Supreme Court in Saul v. St. Paul-Mercury Indem. Co., *supra,* which involved a situation closely analogous to the situation before us. There the insured claimed that although he did not purchase and pay the premium rate for insurance coverage which would have protected him against damage resulting from flood or rising water, the word "water" found in the general description of coverage for which premiums were paid should be construed to include damage by "flood or rising water." The Kansas Supreme Court rejected this view stating that it could not agree to such a narrow rule of construction for determining the intent of the parties. The court held that this was particularly true where it plainly appeared in the policy that various types of insurance were available and that the insured declined to purchase the kind of insurance which would have afforded the kind of coverage he then claimed. This is the situation here.

■ Plaintiff contends that since the title to the Thunderbird was in the names of Robert J. Leary and/or Patricia Leary, they were tenants in common under K.S.A. 58–501, which provides that personal property devised to a husband and wife shall create a tenancy in common in such property unless specific language in the devise makes it clear that a joint tenancy was intended to be created. Plaintiff thus contends that the car was not solely owned by either the named insured or by a member of the same household, and, therefore, it was not excluded under the policy. The district court held, how-

ever, that under the applicable statutory and case law of Kansas and the motor vehicle registration regulations promulgated pursuant thereto, either Robert Leary or Patricia Leary was capable of conveying good title, and, therefore, either could be considered as the "owner." The court noted that Regulation No. 95–1–20 which was in effect at the time the Thunderbird was registered provided that whenever a certificate of title is issued in the name of two or more persons using the phrase "and/or" a new certificate of title will be issued upon the presentation of an assigned certificate of title which has been executed by any one of the persons shown as an owner on the certificate of title, and that, under Kansas law, regulations properly filed have the effect of law. The court further noted that under the holding of the Supreme Court of Kansas in Maryland Cas. Co. v. American Family Ins. Group, 199 Kan. 373, 429 P.2d 931 (1967), the word "owner" when used in an automobile insurance policy must be construed in accordance with the construction placed on the word in the Kansas motor vehicle registration statute, K.S.A. 8–135(c), the statute being, in effect, read into the terms of the policy. The question there was whether the buyer of an automobile was the "owner" after he had been delivered possession thereof but before the certificate of title had been transferred to him in accordance with the motor vehicle registration law. The court held that the seller was still the owner of the automobile under the registration statute and consequently also within the meaning of the policy. See also Western Fire Ins. Co. v. Hawkeye-Security Ins. Co., 213 F.Supp. 744 (W.D. Mo.1962), similarly applying Kansas law.

Certainly, the Kansas motor vehicle registration statutes and regulations cannot be disregarded. But whether the car was owned jointly or severally, whether Leary was owner or co-owner with his wife who was a member of his household, would have no material effect under the facts here. It was owned by one or both of the Leary's who were members of the same household, and there is no contention nor showing that Robert Leary, the insured, did not have authority to exercise control over it.

As was said by the distict court, if the court were to construe the policy as plaintiff suggests, i. e., that neither the named insured nor a member of the same household owned the Thunderbird, the same would be true of the other two cars since all three were titled in the names of Robert J. Leary and/or Patricia Leary. Under such a construction, plaintiff's claim of coverage under the liability provisions applicable to the other two cars would be defeated since Insuring Agreement V provides that only if during the policy period such named insured or spouse owns a private passenger automobile covered by the policy will there be coverage under that clause. See Daugaard v. Hawkeye Security Ins. Co., 239 F.2d 351, 354 (8th Cir. 1956). We conclude that there is no merit to plaintiff's argument on this point.

The provisions of the policy when applied to the facts here are clear and unambiguous and must be given their plain meaning. The policyholder intentionally cancelled the liability provision as to the car involved in the accident and obtained a refund of the premium. The policyholder had control over the car, which was owned by him and/or his wife. It was specifically excluded from the liability coverage pertaining to the parties' other two cars as a car owned by policyholder or a member of his household, and it is not for this court to alter the agreement between the parties.

The judgment of the district court is affirmed.