**Donald ELLSWORTH,
Plaintiff-Appellant,**

v.

**Howard WORTHEY, Pansy Worthey and
Richard K. Wilson,
Defendants-Respondents.**

**No. 11470.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 1981.

Motion for Rehearing or Transfer
Denied Feb. 19, 1981.

Application to Transfer Denied
April 6, 1981.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for plaintiff-appellant.

Arch M. Skelton, Springfield, for defendants-respondents.

PREWITT, Presiding Judge.

Plaintiff brought suit charging defendants with conversion of a truck. He appeals from a summary judgment entered in favor of defendants.

The following undisputed facts are revealed in the second amended petition and defendant Wilson's affidavit accompanying the motion for summary judgment. Defendants were engaged in the business of selling used trucks in Springfield, Missouri, under the name of Worthey Truck Sales. They owned and had a Missouri certificate of title registered in their business name to a used 1972 Ford truck. On July 15, 1976, defendants entered into an oral agreement to sell that truck to Bud Little who did business in Kalvesta, Kansas, as "Bud's Used Trucks". Little was given possession of the truck at defendants' business in Springfield, Missouri, and took it to Kansas. Defendants had sold trucks to Little several times in the past and "contemplated" that he would show the truck to his banker to secure a loan with which to purchase it. He was to send defendants $5,000 as payment for the truck "shortly" after returning to Kansas, and defendants would then assign the certificate of title and send it to him. On August 20, 1976, in Kalvesta, Kansas, plaintiff paid Little $3,200 for the truck, intending to purchase it, and took possession of it. Mr. Little promised plaintiff "that a title would be forthcoming within a few days by mail." Defendants were not paid for the truck and after several conversations with Little went to Kalvesta, Kan-

sas, in September of 1976, and learned that Little had given possession of the truck to plaintiff. In early October of 1976 defendants went to plaintiff's home in Oklahoma, took possession of the truck, and returned it to Springfield. Defendants possessed the certificate of title to the truck at the time this action was filed.

Defendants in their affidavit contend that Little "had no authority, either expressed or implied, to exercise any ownership rights over the truck or to sell or transfer the truck" until defendants were paid and they had assigned the title to Little. Plaintiff contends that "although defendants had title to said truck at the time of their entrustment of same [to Little], they are estopped to assert said title under the provisions of U.C.C. § 2–403 as enacted in Missouri and Kansas."

After summary judgment was entered in favor of defendants on June 29, 1979, plaintiff filed a motion for new trial alleging, among other things, that an Oklahoma default judgment was entered in favor of plaintiff and against defendant Howard Worthey on May 18, 1978, "and its effect is to preclude a contrary judgment at this time." Plaintiff contends that the court's decree "fails to accord to the Oklahoma judgment full faith and credit." Attached to the motion for new trial was an authenticated "JOURNAL ENTRY JUDGMENT BY DEFAULT" in favor of plaintiff and against "HOWARD WORTHY d/b/a WORTHY TRUCK SALES" for $3,287.15 with interest and costs. This judgment was first presented to the trial court in the motion for new trial.

Appellant presents two points for our review: (1) that defendants were estopped to claim title to the truck because they "entrusted said truck to a dealer of like trucks who had sold said truck to plaintiff, a good faith purchaser in the ordinary course of business", and (2) that the trial court erred in not setting aside the summary judgment in favor of defendant Howard Worthey because the prior Oklahoma judgment "was entitled to full faith and credit under the United States Constitution."

We consider initially plaintiff's first point. Plaintiff concedes that a Missouri certificate of title to the truck showed ownership in defendants' business name. Plaintiff contends that defendants are "estopped" to now claim ownership because they entrusted the truck to a used truck dealer who sold it to him. He relies on subsections (2) and (3) of § 2–403 of the Uniform Commercial Code. Both Missouri and Kansas have enacted this section. In Missouri it is § 400.2–403, RSMo 1978, and in Kansas K.S.A. 84–2–403. These subsections state:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

Defendants contend that this section cannot apply here because a sale without delivery of a properly assigned certificate of title to a motor vehicle is void both in Missouri, § 301.210(4), RSMo 1969, and Kansas, K.S.A. 8–135(c)(6) and (7). They claim that plaintiff's purported purchase was "fraudulent and void".

We believe that Kansas law would apply to plaintiff's first point. When possession of the truck was given to Little, defendants knew that he would take it to Kansas. Plaintiff's purported purchase occurred in Kansas and whether defendants thereby lost their ownership of the truck should be determined by that state's law. See Restatement (Second) of Conflict of Laws § 244 (1971). See also *J.C. Equipment, Inc. v. Sky Aviation, Inc.*, 498 S.W.2d 73, 76 (Mo.App.1973). Plaintiff pled that the law of Kansas applies and therefore we take judicial notice of the statutes and judicial decisions of that state. Rule 55.21(b), V.A.M.R. *Conley v. Berberich*, 300 S.W.2d 844, 848 (Mo.App.1957).

Plaintiff cites numerous cases from states other than Kansas and Missouri, contending that ownership to a vehicle may be lost under K.S.A. 84–2–403(2), by entrusting it to a dealer who sells it. We agree, as that section appears to be broad enough to include vehicles. However, the next question is whether plaintiff can be "a buyer in ordinary course of business" in Kansas because he did not receive a certificate of title. For K.S.A. 84–2–403(2) to apply the sale must be made to such a buyer. That is "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind". K.S.A. 84–1–201(9). "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." K.S.A. 84–1–201(19).

It appears to be the law of Kansas that a purported sale of a used vehicle without delivery of a duly assigned certificate of title at the time possession to the vehicle is given as required by K.S.A. 8–135(c) is ordinarily fraudulent and void. *Sims v. Sugg*, 165 Kan. 489, 196 P.2d 191 (1948). See also *Melton v. Prickett*, 203 Kan. 501, 456 P.2d 34, 40 (1969), and *Maryland Casualty Company v. American Family Insurance Group of Madison, Wisconsin*, 199 Kan. 373, 429 P.2d 931, 937 (1967). An exception to this rule is stated in K.S.A. 8–135(c)(6) and K.S.A. 8–135(c)(7), but this exception would not appear to be applicable here. It allows the parties to a sale to execute an agreement on a form prescribed by the division of vehicles, that delivery of the certificate of title may be delayed up to fifteen days after delivery of the vehicle if the seller has possession of the certificate or has made application to the division for a certificate. K.S.A. 8–135(c)(6). The only agreement claimed here was that plaintiff was "promised ... that a title would be forthcoming within a few days by mail." Little did not have the certificate and could not have legally applied for one.

In *Sims v. Sugg*, supra, possession of a vehicle was acquired in Missouri without complying with the statutes regarding certificates of title and then was taken to Kansas where another purported sale of it was made without delivering a certificate of title. The Kansas Supreme Court held that K.S.A. 8–135(c) was violated. That holding convinces us that K.S.A. 8–135(c) is applicable to this purported sale. Its violation is a criminal offense. *Melton v. Prickett*, supra, 456 P.2d at 40.

Where the buyer receives a certificate of title which appears proper, although K.S.A. 8–135(c) was violated and the certificate was fraudulently acquired by the seller, the buyer might, in certain situations, acquire ownership of the vehicle. See *Farm Bureau Mutual Insurance Co. v. Carr*, 215 Kan. 591, 528 P.2d 134 (1974). However, where a certificate of title is not received, it appears to be the law of Kansas and elsewhere that the purchase is not in good faith. See *Sims v. Sugg*, supra, 196 P.2d at 195. See also *Guinn v. Lokey*, 151 Tex. 260, 249 S.W.2d 185, 189 (1952); *Ballard v. Associates Investment Co.*, 368 S.W.2d 232, 234 (Tex.Civ.App.1963). Participating in an unlawful transaction would not be "honesty in fact", at least where, as here, plaintiff did not receive a certificate of title and the parties did not otherwise comply with K.S.A. 8–135(c). We think that such a purchaser as plaintiff purports to be here would not be a buyer in ordinary course of business under Kansas law, and thus is not entitled to the benefits of K.S.A. 84–2–403(2). Point one is denied.

Point two contends that the trial court should have set aside the summary judgment as to Howard Worthey because plaintiff received a prior Oklahoma judgment against him and it was entitled to full faith and credit in Missouri. No attempt to bring suit upon the Oklahoma judgment or to register it under the "Uniform Enforcement of Foreign Judgments Law", § 511.-760, RSMo 1978, is shown in the record. This judgment was first presented to the trial court in a motion for new trial after the summary judgment had been granted. The existence of such a judgment does not create an absolute right to enforce it in Missouri. On certain grounds a judgment

debtor may question it. See *Corning Truck & Radiator Service v. J. W. M., Inc.,* 542 S.W.2d 520, 524 (Mo.App.1976). Even if we assume that the Oklahoma judgment would have been relevant if presented before the summary judgment, the trial court was not required to set aside the judgment because of matter not earlier presented unless certain showings were made, including that the matter was not previously within the plaintiff's knowledge. *Gehner v. McPherson,* 430 S.W.2d 312, 316 (Mo.App.1968). It is unlikely that plaintiff was without knowledge before the summary judgment of the judgment rendered in his favor. He made no attempt to show that he was unaware of the Oklahoma judgment previous to the summary judgment. A party who fails to present available material evidence in response to a motion for summary judgment cannot later use it to contest the result. *State ex inf. Reardon v. Mueller,* 388 S.W.2d 53, 57 (Mo.App.1965). Point two is denied.

The judgment is affirmed.

All concur.