(644 P.2d 486)
No. 53,143

GLENN H. KIRK and BERTHA L. KIRK, *Plaintiffs-Appellees,* v. ANTHONY J. MILLER, JR., *Defendant,* HALLIE BROWN and GERALDINE BROWN, *Defendants-Appellants.*

Petition for review denied June 28, 1982.

Opinion filed May 6, 1982.

*Gregory B. Durr* and *Erma C. Schmidt,* of Legal Services of Southeast Kansas, of Pittsburg, for the appellants.

*Dorothy Arlene Bates Kirk,* of Leawood, for the appellees.

Before SWINEHART, P.J., ABBOTT, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: This appeal involves the liability of the seller of a motor vehicle for damages where the buyer of the vehicle was involved in an accident and the assignment of the title certificate had not been notarized. The facts are not disputed.

In December of 1979, defendants Geraldine and Hallie Brown were the owners of a 1964 Chevrolet pickup truck. They had not driven it for about six months because of a bad clutch, and had permitted the insurance on it to lapse. They were contacted by defendant Anthony J. Miller, Jr., about selling the truck to him. After Miller looked over the truck and was advised of its condition, the Browns offered to sell it to him for $400.

On December 23, 1979, Miller came to the house again, with his mother, for the purpose of purchasing the truck. He paid the Browns $100 and agreed to pay $50 every payday until the purchase price of $400 was paid. The Browns had Miller sign a statement that he was purchasing the truck "as is," and they executed the assignment of title and gave it to him. The assign-

ment was not notarized at the time because the transaction occurred on a Sunday and there was no notary available. Miller's mother promised, however, that she would have the assignment notarized the next day and obtain a release of the lien noted on the title. There is no evidence to indicate that she fulfilled those promises. The license tags, which were due to expire in seven or eight days, were inadvertently left on the truck as Miller drove it away.

On January 26, 1980, defendant Miller ran a stop sign and collided with plaintiffs' car. Subsequently, the State notified the Browns that they were the registered owners of the truck at the time of the accident, and Mr. Brown's driver's license was suspended for permitting the operation of an uninsured vehicle involved in an accident. Miller then signed a statement saying that he owned the truck at the time of the accident and had owned it since December 23, 1979. Brown submitted this statement to the State and his driver's license was reinstated.

Subsequently, the plaintiffs sued Miller and the Browns for damages as a result of the accident that occurred on January 26, 1980. The Browns were sued on the theories that the truck was legally owned by them at the time of the accident and had been negligently entrusted to Miller, or that Miller was the agent of the Browns at the time. Miller defaulted.

Prior to trial, the district court sustained the Browns' motion for partial summary judgment, thereby ruling out any agency relationships between the Browns and Miller. The court also ruled, however, that the sale was void because there was no valid transfer of title to the pickup truck to Miller. The case was set for trial on the issues of Miller's negligence and whether or not the Browns negligently entrusted the vehicle to Miller.

The matter was tried to the court on March 13, 1981. After finding that Anthony Miller was negligent in the operation of the truck, the trial court held that the Browns had negligently entrusted the truck to Miller by failing to properly transfer ownership to him and by leaving their license plate on the vehicle when they knew or should have known that Miller had no liability insurance or means of obtaining liability insurance. Judgment was entered against the Browns in the sum of $902 and the Browns have appealed.

The trial court's ruling that the sale was void was based on the

Browns' failure to have the assignment of title notarized. The statute in effect at the time of the transaction between Miller and the Browns was K.S.A. 1979 Supp. 8-135. Section (c) provides as follows:

"(2) The certificate of title shall contain upon the reverse side a form for assignment of title to be executed by the owner before a notary public or some other officer authorized to administer an oath. . . .

. . . .

"(7) It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed fifteen (15) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within fifteen (15) days thereof."

This statute was considered in *Elrod v. Preferred Risk Mutual Ins. Co.*, 201 Kan. 254, 440 P.2d 544 (1968). Although the statute involved was a prior version, the provisions here in question are the same. There the court stated at page 256:

"We have examined the statute and the cases cited by defendant. We have reviewed other cases on this question, including *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P.2d 931 and *Wilcox Trailer Sales, Inc. v. Miller*, 200 Kan. 315, 436 P.2d 860.

"In each case where it has been held no title passed to the purchaser the *vehicle was delivered without assignment of the certificate of title* and the sale was held fraudulent and void. . . .

. . . .

"The act of omission made unlawful by the statute and which renders the sale fraudulent and void is the delivery of the vehicle to the purchaser without assignment of the certificate of title."

A case similar to the one here is *Farmers Ins. Co. v. Schiller*, 226 Kan. 155, 597 P.2d 238 (1979). There the buyer paid $100 and agreed to pay the balance of $50 the following week. The seller executed the assignment of title but, because it was after 9:00 p.m. and there was no notary available, the assignment was not notarized. The seller gave the buyer the assigned title and possession of the vehicle, and loaned a battery and license tags so the buyer could drive the vehicle home. The buyer agreed to have the assignment notarized and to return the battery and tags the next day but did not do so. Several days later, the car was involved in an accident while being driven by a permittee of the buyer.

In that case, as here, it was contended that the sale was void because the title was not notarized. In discussing the issue, the court stated:

"The first legal issue confronting this court is whether there was a completed sale of the pickup from Hester to Bayless which would relieve Hester's insurance company from exposure under the policy. The Court of Appeals and the trial court determined the sale had not been completed, and that Hester's insurance company was not relieved from exposure under the policy. We agree. However, we cannot agree with the Court of Appeals' holding that the lack of a notarization on the title rendered the sale fraudulent and void. The statute then in effect, K.S.A. 1974 Supp. 8-135(c)(2), did require the assignment of title to be executed by the owner before a notary public. However, K.S.A. 1974 Supp. 8-135(c)(6) further provides:

" 'It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed fifteen (15) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within fifteen (15) days thereof. . . .'

"According to the uncontroverted facts Hester complied with all provisions of the statute except for the notarization of his signature, and when he delivered the title it was agreed the purchaser would have the signature notarized that very evening or return the certificate in the morning so Hester could get it notarized. Under these circumstances the sale was not fraudulent and void. The purpose of K.S.A. 8-135 is to require the issuance of a certificate of title for every vehicle required to be registered under the act, and to provide a means by which one may readily ascertain who is the owner of a motor vehicle, thus protecting the public from the evils arising from the unregulated use, transfer, and sale of such a vehicle. *Melton v. Prickett,* 203 Kan. 501, 456 P.2d 34 (1969).

"The failure to notarize an assignment of title does not necessarily render a contemplated sale fraudulent and void. . . .

. . . .

"In the present case it was agreed between the parties that certain things remained to be done to complete the sale. The title was to be notarized. Bayless was to return the license tag and the battery which were temporarily placed on or in the pickup. There appears no evidence except that which indicates the parties did intend to fully comply with the statute on the following day when the sale would be completed. Until that time the sale was not complete, title did not pass, and plaintiff's exposure under the Hester policy continued." *Farmers Ins. Co. v. Schiller,* 226 Kan. at 158-160.

In the case before us, there was no agreement between the parties that certain things remained to be done to complete the sale. The Browns complied with all the provisions of the statute except for notarization of the assignment of title, and when the

title certificate was delivered, it was agreed that the purchaser would have the title notarized. The parties clearly intended the sale to be completed at the time the vehicle and the title were delivered to Miller, and the trial court erred in holding that the sale was void.

Although the principle of negligent entrustment is recognized in this state, it follows that since the sale was valid and the Browns no longer owned the truck, they cannot be held to have negligently entrusted the vehicle to Miller.

Under the theory of negligent entrustment, liability is based on knowingly entrusting an automobile to a known incompetent or careless driver. *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982); *Fogo, Administratrix, v. Steele*, 180 Kan. 326, 304 P.2d 451 (1956); *Priestly v. Skourup*, 142 Kan. 127, 45 P.2d 852 (1935).

A review of the record in this case discloses that there is no evidence to indicate that the Browns knew or should have known that Miller was an incompetent or careless driver. Further, there is no evidence in the record to support a finding that the Browns knew or should have known that Miller had no liability insurance and no means to obtain such insurance. They only saw him on the two short occasions he came to their house. It would be sheer speculation to infer from the fact that he only paid $100 down on the purchase price and agreed to pay the balance in installments that Miller did not intend to obtain liability insurance and had no means to do so. This is particularly true since Miller told them that he was employed, that he needed the truck to drive to work, and that he would pay future installments on payday.

The judgment of the trial court is reversed as to defendants Hallie and Geraldine Brown.