**In re Mary Lou LOPEZ, Debtor.**

**J. Michael Morris, Plaintiff,**

v.

**Boeing Wichita Employees Credit Union, Mary Lou Lopez, Defendants.**

**Bankruptcy No. 98–15303.**
**Adversary No. 99–5092.**

United States Bankruptcy Court,
D. Kansas.

Dec. 6, 2000.

J. Michael Morris, Wichita, KS, Erin E. Syring, Todd Allison, Wichita, KS, Eric D. Bruce, Bruce, Bruce & Holt, L.L.C., Wichita, KS, Sheila C. Maksimowicz, Wichita, KS.

## MEMORANDUM OPINION

ROBERT E. NUGENT, Bankruptcy Judge.

This matter came before the Court for hearing on November 15, 2000, on the Trustee's Complaint (1) To Avoid And Recover Unperfected Security Interest; And (2) To Determine Rights. The Trustee seeks to preserve for the estate a lien secured by a 1993 Oldsmobile, asserting under his hypothetical lien creditor powers in 11 U.S.C. § 544(a) that such a lien creditor would take the Oldsmobile prior to Boeing Wichita Employees Credit Union ("Credit Union") because the Credit Union apparently intended to release the lien. The Credit Union argues its lien was not released because the employee's signature was not notarized and the release never presented to the Division of Vehicles ("DMV"); thus the lien remains perfected notwithstanding the employee's signature. The Trustee appeared by his attorneys Erin Syring and Todd Allison. Boeing Wichita Employees Credit Union appeared by Eric D. Bruce and Karen Pickens. Sheila Maksimowicz appeared for the debtor, Mary Lou Lopez. After careful review of the case, the Court is ready to rule.

## FACTS

From the facts submitted on stipulations, the exhibits admitted by agreement of the parties, and the witness testimony offered by the Credit Union, the Court makes the following findings of fact. On or about February 20, 1995, debtor granted the Credit Union a security interest in the Oldsmobile in question. Although the nature of the transaction is unclear, the Court can discern from the evidence that the Credit Union's name is shown on the certificate of title issued for the Oldsmobile as of that date. Noone contests that the Credit Union's lien as granted in 1995 was properly perfected. At some unknown point in time prior to the inception of the 1997 transaction described below, the Credit Union appears to have at least contemplated releasing the lien on the Oldsmobile. Indeed, the certificate of title bears the signature of Nancy Parrish who worked as a title and insurance clerk at the Credit Union, but the signature is not notarized.[1] Neither party contests the authenticity of Nancy Parrish's signature. On or about August 1, 1997, the debtor entered into a loan agreement with the Credit Union, granting a security interest

1. The date of Nancy Parrish's signature is not known and no evidence one way or the other was provided.

in the same Oldsmobile. For unexplained reasons, the Credit Union seems to have taken no action to perfect this newly-granted security interest. Ms. Lopez filed her bankruptcy case on December 7, 1998.

The trustee offered no witnesses. The Credit Union offered the testimony of Rosemary Denny, a Credit Union employee for 20 years and currently the manager of the credit union's South Oliver Street, Wichita, branch. She testified that she was familiar with the Credit Union's policy and procedure on lien releases. She stated that its procedure requires two people to sign a lien release. Loan officers, the vice-president of lending and branch managers are authorized to notarize a lien release. Ms. Denny could only *speculate* the lien release was not completed because the Credit Union learned of the second lien on the Oldsmobile in time to prevent notarizing the signature and presenting the title. The Court admitted this testimony, but finds that, with regard to the purported release, it has little probative value. Ms. Denny could not say whether the balance of Ms. Lopez' credit had ever been paid to zero.

The Credit Union also presented the testimony of Marge Bailey, the Bureau Chief for the DMV, who testified about what the DMV requires with regard to a lien release. Bailey, who has been the Bureau Chief at the DMV for ten years, supervises the issuing of title certificates. She stated that in accordance with DMV policy which is based on the requirements set forth in Kan.Stat.Ann. § 8–135, signatures on the lien release portion of the title certificate must be notarized and if they are not, DMV will reject the certificate and return it to the vehicle's owner. Bailey testified that the notary policy is written in the DMV manual and in memoranda sent to the counties, presumably their tag offices.[2] The standard form for a certificate of title issued by DMV contains on its face a blank for release of a creditor's lien. The blank includes spaces for the signature of the secured creditor and a notary public. The parties stipulated to the admission of various exhibits, several of which portrayed the secured title in question with and without the Parrish signature in the release area. The title was issued on the standard form. Bailey also testified that she searched the DMV's master file of records concerning the Oldsmobile and found no lien release on file.

### ANALYSIS

█ Hampered though it is by the lack of probative evidence in this matter, the Court starts by determining the extent of the trustee's avoiding power in this case. The trustee is permitted to avoid any transfer of property or obligation incurred by the debtor that would be avoidable at state law by either:

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [and]

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such the time, whether or not such a creditor exists. . . .

11 U.S.C. § 544(a)(1) and (2). The parties agree that the Credit Union took no action to perfect the security interest it was granted in 1997 and, if that security interest is perfected, it is only because the 1995 lien was not released of record.

█ The priority of the trustee's hypothetical judicial lien on debtor's property as of the date the bankruptcy petition was filed must be determined in accordance with nonbankruptcy law, usually state law. 11 U.S.C. § 544(a)(1); *Sender v. Simon* 84

2. The parties did not submit a DMV manual or memorandum into evidence.

F.3d 1299 (10th Cir.1996); *Gaddis v. Allison*, 234 B.R. 805 (D.Kan.1999). Here the trustee must show that as a hypothetical lien creditor, he would take prior to the purported secured party as a matter of state law. As provided in Kan.Stat.Ann. § 84–9–301(1)(b), a person who becomes a lien creditor before a security interest is perfected takes prior to the holder of an unperfected security interest. In order to stand as a "lien creditor," the trustee must demonstrate by a preponderance of the evidence not only that the 1995 lien was properly released, but also that the 1997 lien was never perfected. Unfortunately, all that this record reflects is that a representative of the Credit Union allegedly signed her name in the release area of the certificate.

As a matter of state law, Kan.Stat.Ann. § 84–9–302(3)(c) provides, in part, that security interests in vehicles are perfected only by presentation of the registration or perfecting documents specified under the Motor Vehicle Code. *See* Kan.Stat.Ann. § 8–135. Kan.Stat.Ann. § 84–9–302(3)(c) provides, in part, that a security interest in a titled motor vehicle—

> ... can be perfected only by presentation, for the purpose of such registering or such filing or such indication, of the documents appropriate under [K.S.A. § 8–135] to the public official appropriate under [K.S.A. § 8–135] and tender of the required fee to or *acceptance of the documents by such public official,* or by the *mailing or delivery* by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. § 8–135.... *Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article [Article Nine] as perfection by filing under this statute.* (emphasis added)

Having briefly discussed the trustee's need to establish his lien creditor status and what the Uniform Commercial Code requires of lenders to achieve perfection of vehicle liens on a par with other Article Nine transactions, the Court must now turn to the often inscrutable provisions of Kan.Stat.Ann. § 8–135 as they relate to releases of liens. That statute provides, *inter alia,* that "[w]hen a prior lienholder's name is removed from the title, there must be *satisfactory evidence presented* to the division that the lien or encumbrance has been paid in full." Kan.Stat.Ann. § 8–135(c)(6) (emphasis added). The statute also states that a release is effected by furnishing to the holder of the title a release of lien or executing such a release in the space provided on the title. On the certificate of title, the lien release includes space for the lienholder's name, a signature by the lienholder's representative and a notary block. Although the statute does not specifically call for release signatures before a notary, Bailey testified that the DMV equated "satisfactory evidence" with notarization and would not accept a lien release without notarization. Kan.Stat. Ann. § 8–135 being the only statute governing the perfection of security interests in vehicles, proper compliance with its provisions seems necessary not only to perfect a security interest in a vehicle, but also to release one. *See Beneficial Finance Co. of Kansas, Inc. v. Schroeder,* 12 Kan.App.2d 150, 151, 737 P.2d 52 (1987) (Pursuant to K.S.A. § 84–9–302(3), a security interest in a vehicle may be perfected by noting its existence on the vehicle's certificate of title, or by mailing or delivering notice of the security interest to the Division of Motor Vehicles, K.S.A. § 8–135(c)(5).) Both the Motor Vehicle Code and the Kansas U.C.C. require the presentation or delivery by mail of documentation satisfactory to the DMV to effect a release.

What the Court must determine is what a lien creditor might find were he or she to review the DMV's records to determine who else might claim an interest in this vehicle. The only evidence in the record in that regard is Bailey's testimony to the effect that the Credit Union's lien is shown on the title and in the Division's records. The purported release signature was not notarized and presumably would not have been accepted by a county treasurer or the Division without the notarial seal. The

existence of Ms. Parrish's signature, while suggestive, is in no way conclusive that the Credit Union took meaningful action to release the lien. Nowhere is it shown that the certificate was mailed or otherwise delivered to the DMV,[3] nor does it appear that DMV has ever determined that the release purported on the title would have been the "satisfactory evidence" that Kan. Stat.Ann. § 8–135 contemplates.

The trustee ably argued in his trial brief that the only purpose for notarizing signatures is the authentication of the identity of the signer, and that, in this case, there was no need for authentication because no one has suggested that Ms. Parrish's signature is other than genuine or that any fraud was afoot. *See* Kan.Stat.Ann. § 53–107. To support his view that the absence of the notary's seal was not fatal to the release, the trustee relied upon *Farmers Insurance Co. v. Schiller*, 226 Kan. 155, 597 P.2d 238 (1979) and *Kirk v. Miller*, 7 Kan.App.2d 504, 644 P.2d 486 (1982). Both of these cases involved situations where the ownership of a vehicle at the time of an accident was in question. In each case, the sellers had signed over the title to the buyers, but had failed to do so before a notary. When the respective accidents occurred, an issue arose as to who owned the vehicles and which owner's insurer would be responsible for the attendant losses. In *Schiller*, evidence was developed at trial that the sellers and buyers intended to secure a notary stamp on the certificate the next day and that other facets of the sale agreement had yet to be completed. The Supreme Court held therefore that the sale of the vehicle was not complete. In *Kirk*, the Court of Appeals held that no further facets of the agreement to buy and sell remained to be completed and that the sale was complete.

In the instant case however, neither the trustee nor the creditor adduced *any* evidence about the circumstances surrounding the naked signature on the release form. There simply is no evidence, other than Ms. Parrish's mute, unwitnessed signature, that the Credit Union intended to release its lien. The Court can easily envision the legion opportunities for mischief which would result from a system wherein naked purported signatures of secured parties could be presented in support of releasing liens on motor vehicles without some additional authentication. How else is the Division to ascertain the authenticity of a signer than by requiring that his or her signature be notarized?

No evidence shows that Ms. Lopez' 1995 obligation was ever paid in full. The trustee offered no such evidence and Credit Union representative could not tell the Court anything about the debtor's loan history. Satisfactory evidence that the lien or encumbrance is paid is full is an express requirement of Kan.Stat.Ann. § 8–135. Other courts have also held that this prerequisite must be shown before a release is effective. *See In re Smith & West Constr. Inc.*, 28 B.R. 682, 684–85 (Bankr. D.Or.1983); *In re Office Machines Exchange, Inc.*, 47 B.R. 644, 647 (Bankr. S.D.Ill.1985) (mere execution of the release portion on the certificate of title by a lienholder is insufficient to effectuate a release where there is no satisfaction of security interest).

Finally, the trustee argues that this is a case of a mistaken release. In his brief, the trustee cites several cases which hold that the mistaken release of a UCC–1 financing statement renders the security interest no longer perfected. *See J.I. Case Credit Corp. v. Foos*, 11 Kan.App.2d 185, 717 P.2d 1064 (1986), *rev. denied* 239 Kan. 638; *In re Kitchin Equip. Co. of Virginia, Inc.*, 960 F.2d 1242 (4th Cir.1992); *In re Pacific Trencher & Equip., Inc.*, 735 F.2d 362 (9th Cir.1984). In these cases, there was no question that the releases were properly prepared and filed. No such situation exists here, though. There is insufficient evidence to show that the lien release was intended. Because the trustee

---

**3.** Indeed, the debtor appears to have had possession of the title from the time Ms. Parrish signed it until the debtor delivered it to the trustee.

has failed to prove that the lien release was prepared properly, the Court need not consider whether the release was "mistaken."

The trustee had the burden to prove that his lien creditor status trumped the secured status of the Credit Union. To do this, he had to show by a preponderance of the evidence that the 1995 lien was released or should be viewed as released in accordance with applicable Kansas law and, accordingly, that the current evidence of perfection does not serve to perfect the 1997 security interest. Because the trustee has failed to carry his burden of proof, judgment is entered on the Trustee's complaint for the defendant Credit Union and the debtor and the same will be filed on a separate Judgment on Decision to be entered this day.

IT IS SO ORDERED.